C. C. COMMANDER v. W. L. PEDERSEN.

156 So. 337.
Division B.
Opinion Filed August 10, 1934.

*Wm. Hunter* and *Billie B. Bush,* for Plaintiff in Error; *Allen E. Walker* and *Gaines & Futch,* for Defendant in Error.

BUFORD, J.—The writ of error in this case is to a judgment entered in favor of the defendant on demurrer being sustained to amended declaration.

The amended declaration was in five counts. Neither count of the declaration alleges any special damages. The first count of the declaration, after alleging that the plaintiff was a man of good reputation, etc., and that he was the general manager of the Florida Citrus Exchange and alleging that the Florida Citrus Exchange is a co-operative organization under the laws of the State of Florida organized for the purpose of marketing and selling citrus fruit for the growers thereof who are members of the association and sub-exchanges affiliated with and marketing their fruits through the said Citrus Exchange, and that the position of general manager was an office of trust and responsibility, further alleges that there was at the time of the alleged grievance, and for many years prior thereto, in existence a by-law of the Florida Citrus Exchange, of which the plaintiff was general manager (Sec. 7 of Article 7 of said by-laws) which reads as follows:

"Section 7. No officer or employee of the Florida Citrus Exchange or Manager of any Sub-Exchange or Association packing house, shall speculate in citrus fruit, and such conduct on his part shall justify his removal."

It is then alleged that the defendant well knew of the existence of this by-law. It alleges that the defendant, well knowing all the matters and things alleged, by then and there contriving and maliciously intending to injure the plaintiff in said office or position as general manager of the Florida

Citrus Exchange and to bring him as such general manager of the Florida Citrus Exchange into public scandal and disgrace, on the 13th day of May, 1932, in Lake County, Florida, in a certain discourse by the defendant then and there had concerning the plaintiff and in the presence and hearing of divers persons, falsely and maliciously spoke of and concerning the plaintiff in his office or capacity of such general manager certain false, scandalous and defamatory words, as follows:

"That last year, Mr. Commander (meaning the plaintiff) and the manager of the Dundee Association (meaning the Dundee Citrus Growers Association, which was then affiliated with and marketed the fruit of its members through the Florida Citrus Exchange) purchased fruit and shipped it through the said Dundee Association, and when they would get high prices, that would be their fruit, and when they would get low prices, it would be the growers' fruit."

The declaration then charges:

"Which words were falsely and maliciously untrue and uttered for the purpose of bringing the plaintiff as such general manager of the Florida Citrus Exchange into disrepute, and injuring him in his said office or position, and thereby accusing the plaintiff of using his office and influence as such general manager to his own financial gain and to the financial loss of citrus growers who marketed their fruit through said Dundee Association and the Florida Citrus Exchange, and further thereby accusing the plaintiff of violating the said By-Laws of the said Florida Citrus Exchange, which violation, if true, would have been cause for his removal as such general manager."

The second count, in addition to the allegations made in the first count, charges that the defendant spoke and published of and concerning the plaintiff in his said office or capacity as general manager, as follows:

"That this last season (meaning the fruit shipping season of 1931-1932) Mr. Commander (meaning the plaintiff) and his brother-in-law, Mr. Bailey (the manager of the Haines City Citrus Growers Association, which is affiliated with and markets the fruit of its members through the Florida Citrus Exchange) purchased fruit and sold it through other sources than the Florida Citrus Exchange, and that he (meaning the plaintiff) did not have confidence enough in his organization to sell the fruit that he had purchased through it."

And alleges:

"And thereby falsely accusing plaintiff of not having confidence in the said Florida Citrus Exchange, of which he is such general manager, and further accusing the plaintiff of violating the said By-Laws of the Florida Citrus Exchange mentioned in the first count hereof, which violation, if true, would have been cause for his removal as such general manager."

The third count in like manner charges that the defendant spoke and published of and concerning the plaintiff as follows:

"That he (the said Pedersen) had his life's savings in the citrus business, and he wasn't going to permit a bunch of crooks in the Tampa office to take it away from him."

And alleges:

"That said words were used in the course of and at the same time of the speaking of the words alleged in the first and second counts hereof, and were spoken in connection therewith, and that the said defendant did then and there refer, and it was so by the hearers of said words understood to refer to this plaintiff as one of the said crooks in the Tampa office, the defendant then and there meaning that the plaintiff was a crook, and was dishonest in his office or

capacity as general manager of the Florida Citrus Exchange, and that said words were used in a defamatory sense of and concerning the plaintiff in his said office as such general manager.".

The fourth count in like manner charges that the defendant spoke of and concerning the plaintiff as follows:

"That Mr. Commander (meaning the plaintiff) was a stockholder in Shaver Brothers Canning Company, and that he used the Exchange fruit for the benefit of said cannery."

And alleges:

"Thereby meaning that the plaintiff was in violation of his duty as general manager of the Florida Citrus Exchange, using or handling the fruit of the grower members of the Florida Citrus Exchange for the profit or advantage of the said Shaver Brothers Canning Company, of which defendant alleged plaintiff was a stockholder, and to the financial benefit of the said Shaver Brothers Canning Company, of which he was alleged to be such stockholder, at the expense and to the injury of citrus growers who were marketing their fruits through associations affiliated with or marketing through the Florida Citrus Exchange."

The fifth count alleged in like manner that the defendant spoke of and concerning the plaintiff as follows:

"That last year Mr. Commander (meaning the plaintiff) and the manager of the Dundee Association (meaning the Dundee Citrus Growers Association, which was then affiliated with and marketed the fruit of its members through the Florida Citrus Exchange) purchased fruit and shipped it through the said Dundee Association, and when they would get high prices, that would be their fruit, and when they would get low prices it would be the growers' fruit.

"That this season (meaning the current citrus fruit shipping season) Mr. Commander (meaning the plaintiff) and his brother-in-law, Mr. Bailey (the manager of Haines City

Citrus Growers Association, which is affiliated with and markets the fruit of its members through the Florida Citrus Exchange) purchased fruit and sold it through other sources than the Florida Citrus Exchange and that he (meaning the plaintiff) did not have confidence enough in his own organization to sell fruit that he had purchased through it.

"That he (the said Pedersen) had his life's savings in the citrus business, and he wasn't going to permit a bunch of crooks in the Tampa office to take it away from him.

"That Mr. Commander (meaning the plaintiff) was a stockholder in Shavers Brothers Canning Company, and that he used the Exchange fruit for the benefit of the said cannery."

And alleges:

"That such words were used of the plaintiff in a defamatory sense in relation to and above him as such general manager of the Florida Citrus Exchange."

Now, the question for our determination is whether or not the orally spoken statements alleged to have been made by the defendant constituted slander *per se*.

It will be noticed that the declaration in each of the counts thereof alleges that these statements were damaging to the plaintiff because of extrinsic facts which are set forth in each of said counts of the declaration.

It should be borne in mind that the alleged statements are alleged to have been orally made and not made in writing.

The law applicable to the case under consideration appears to be stated in 17 R. C. L. 263, *et seq.,* as follows:

"Liability for Oral and Written Defamation Distinguished.—There is a well settled distinction between written or printed and mere oral defamation in respect to its actionable character. Much which if spoken would not be

actionable without an averment of extrinsic acts or an allegation and proof of special damage when written or printed is actionable. Defamatory words when spoken are ordinarily not actionable *per se,* unless they impute a crime; but written or printed words are actionable when they subject the person to disgrace, ridicule, odium or contempt in the estimation of his friends and acquaintances or the public. The reasons given to explain this distinction are that written slander is much more extensively and permanently injurious to character than verbal, being more widely circulated; that it is, therefore, more aggravated and dangerous, as tending to breaches of the peace; and that the deliberation necessary to prepare and circulate a written slander evinces greater malice in the slanderer and is worthy of stricter punishment. But to these reasons it has been answered that the first may or may not be true, this depending on the circumstances under which the slander was spoken or the libel published, and that the last two reasons have no application to the question, as neither the tendency to a violation of the peace nor malice is the foundation of a civil action, which is merely for damages for the wrong done to reputation.

"Imputations Actionable *per Se* or *per Quod.*—Words may be actionable in themselves or *per se,* or they may be actionable only on allegation and proof of special damage or *per quod.* The distinction is based on a rule of evidence. Words of both classes are actionable on the same grounds and for the same reasons. The noxious quality in both lies in the fact that they are the natural and proximate causes of pecuniary damage to those concerning whom they are maliciously uttered. The difference between them is in the matter of proof of the resulting injury. In the case of words actionable *per se,* their injurious character is a fact of common notoriety, established by the general consent of men, and the court consequently takes judicial notice of

it. They necessarily import damage, and therefore in such cases general damages need not be pleaded or proved, but are conclusively presumed to result, and special damage need not be shown to sustain the action. Moreover, malice is presumed as a matter of law in such cases. Words actionable only *per quod* are those whose injurious effect must be established by due allegation and proof. In determining on the actionable nature of words, courts are very likely unless controlled by precedent, to decide in accordance with the general and fixed opinion of the particular locality as to the damaging effect of the charge contained in the words. Hence, the decisions are apt to vary with the moral and social condition and views of different communities. In certain instances, where the utterance of the defendant is not clearly actionable *per se,* the surrounding circumstances and conditions must be taken into account to determine the matter, though not the inuendoes in the pleadings."

In 36 C. J. 1150, the writer says: "Defamatory words may be divided into those that are actionable *per se,* and those that are actionable *per quod.* Words which, upon their face and without the aid of extrinsic proof, are injurious are defamatory *per se;* but if the injurious character of the words appears not from their face in their usual and natural signification, but only in consequence of extrinsic facts, they are not defamatory *per se,* and in such cases the words are said to require an innuendo. It has been held that words in order to be defamatory *per se,* must be susceptible of but one meaning. No strict rule of law may be laid down in distinguishing between publications that are defamatory *per se* and those that are defamatory *per quod.* The distinction is based on a rule of evidence, the difference between them being as to the proof required as to any resulting injury; it rests on the fact that the law recognizes two classes of damages in suits for defamation,

general and special. Special damages are such as are computable in money, which are the natural, but not the necessary result of the alleged wrong and do not follow by implication of law upon proof of the defamatory words. General damages are those which the law presumes must actually, proximately and necessarily result from the publication of the defamatory matter; and since they arise by inference of law, they are not required to be proved by evidence, and are allowable whenever the immediate tendency of the words is to impair plaintiff's reputation, the words being clearly defamatory on their face, although no actual pecuniary loss has in fact resulted, the words from which the law presumes injury in such case being actionable *per se*. If the words are not actionable *per se* there can be no recovery of general damages. Words defamatory *per se* carry the presumption of falsity, or damages, and, if not published on a privileged occasion, of malice. Words which are defamatory *per se* do not need an innuendo, and, conversely, words which do need an innuendo are not defamatory *per se*. Words used in a publication, even if not actionable in and of themselves, may become actionable, if, under the circumstances and in the connection in which they were used, they convey a hidden and covert defamatory meaning and are understood in such sense by the person or persons addressed, and become actionable *per quod,* that is, the publication must result in special damage to the party complaining; special damages must be alleged and proved. The technical distinctions of the common law as to the words actionable *per se* and not actionable *per se* do not obtain where the civil law prevails, and no distinction is made between words actionable *per se* and words actionable only with reference to a special damage."

And, on page 1152 of the same volume, it is said: "There is a recognized distinction between words spoken and those

written, in respect to their constituting a ground of action *per se;* and, in determining whether particular words are actionable *per se,* the same rules do not apply to libel as to slander. The law of libel is of wider extent than that of slander; or, stated conversely, the law of slander is much narrower in scope and operation than the law of libel. The presumption that words are defamatory arises much more readily in cases of libel than in cases of slander. While whatever charge will sustain a suit for slander when the same words are merely spoken will sustain a suit for libel if they are written or printed and published, defamatory matter printed and published may be *per se* actionable while the same matter orally published would not be so."

See also Abraham, *et al.,* v. Baldwin, 52 Fla. 151, 42 So. 519, 10 L. R. a. (N. S.) 1051.

As we construe the allegations, except those contained in the third count of the declaration, the statements alleged to have been made by the defendant standing alone would not constitute actionable slander *per se* and to constitute those statements actionable slander it is necessary to allege and prove extrinsic facts and innuendoes, then the alleged slanderous statements are not actionable *per se,* but are slanders actionable *per quod,* and, to recover in a suit for damages for slander *per quod,* it is necessary to allege and prove that the language did produce actual damages, as well as to allege and prove that the language used was defamatory and slanderous. 17 R. C. L. Sec. 15, page 311.

We hold, however, that the third count of the amended declaration is sufficient to allege a cause of action. The word "crook" has come to have a very definite meaning amongst the people of all English-speaking countries. To charge that one is a "crook" is in effect to charge that such a one is unscrupulous, dishonest and not worthy of con-

fidence and, therefore, is a person deliberately and outside of a privileged communication charges, either orally or in writing, that another is a "crook," such language is actionable *per se,* because such words come within the purview of the authorities hereinbefore cited. We have seen that in 17 R. C. L. 263, *et seq.,* it is said, "Words may be actionable in themselves or *per se,* or they may be actionable only on allegation and proof of special damage or *per quod* * * *. The noxious quality in both lies in the fact that they are the natural and proximate cause of pecuniary damage to those concerning whom they are maliciously uttered * * *. In the case of words actionable *per se* their injurious character is a fact of common notoriety established by the general consent of men and the court consequently takes judicial notice of it. They necessarily import damage and, therefore, in such cases general damages need not be pleaded or proved, but are conclusively presumed to result and special damages need not be shown to sustain the action."

In 36 C. J. 1150, we have seen, "Words which, upon their face and without the aid of extrinsic proof, are injurious are defamatory *per se."*

For the reasons stated, it appears to us that the demurrer to all except the third count of the amended declaration was properly sustained, but the demurrer to the third count should have been overruled. Therefore, the judgment must be reversed and the cause remanded with directions that an order be entered overruling the demurrer to the third count of the amended declaration and allowing the defendant to plead thereto and such other and further proceedings be had in the cause not inconsistent with this opinion.

It was so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and TERRELL, J., concur in the opinion and judgment.