98 So.2d 79 (1957)
Harry E. TEARE, Appellant,
v.
LOCAL UNION NO. 295, OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBERS AND PIPE FITTERS INDUSTRY OF THE UNITED STATES AND CANADA; Hugh K. Rule, Individually and as Business Agent for Local Union No. 295 of the United Association of Journeymen and Apprentices of the Plumbers and Pipe Fitters Industry of the United States and Canada, Appellees.
Supreme Court of Florida.
November 6, 1957.
*80 Thomas A. Koehler, Daytona Beach, for appellant.
Berrien H. Becks, Daytona Beach, for appellees.
THORNAL, Justice.
Appellant Teare, who was plaintiff below, seeks reversal of a judgment in favor of the *81 appellees, Rule and Local Union No. 295, who were defendants below, in an action for damages resulting from the alleged slander of the appellant by the appellees.
Our decision must turn on whether the words used by Rule were slanderous per se or on the other hand whether the spoken words were qualifiedly privileged.
Appellant Teare was a plumber engaged in his trade in Volusia County. He had a contract to do the plumbing work on a building which was being constructed by Edmund and Margaret Flagg. The Hawes brothers were general foremen and masonry contractors. The Hawes were members of the Local Masons Union. Teare was not a member of the Local Plumbers Union. Appellee Rule was the business agent for Local Union No. 295 of the United Association of Journeymen and Apprentices of the Plumbers and Pipe Fitters Industry of the United States and Canada. While the Flagg building was under construction, Mr. Rule in the company of the Hawes brothers went to see Mr. and Mrs. Flagg and allegedly made the following statements to them:
"[1] If Mr. Teare continued on the job, none of the other sub-contractors would be allowed to work.
"[2] That for the sake of your health you are making a mistake in engaging Mr. Teare, since his work is known to be unsatisfactory and will not pass inspection.
"[3] That Mr. Teare's work has been repeatedly found to be unsatisfactory."
The numbering of the quoted paragraphs has been inserted by us for convenience of later reference to the alleged slanderous statements.
Substantially the same statements were later made by Mr. Rule at the Union Hall when Mr. and Mrs. Flagg called upon him in an effort to obtain the consent of the Union to the partial completion of their job by Mr. Teare.
When Mr. Rule remained adamant in his position the Flaggs thereupon cancelled the plumbing contract with Teare and proceeded to employ Union plumbers to complete the job.
Deeming himself to have been damaged by the statements, Teare instituted this action against Rule and the Plumbers Union seeking an award of damages.
At the trial the above stated facts were sustained by the evidence offered by the plaintiff. At the close of the plaintiff's case the trial judge granted defendants' motion for a directed verdict. Judgment for the defendants was entered on the directed verdict. Reversal of this judgment is now sought by the appellant-plaintiff.
Appellant here contends that the words used by Rule were slanderous per se and therefore were actionable regardless of allegation or proof of malice or special damages.
It is the contention of the appellees that under the circumstances reflected by the record, Rule enjoyed a qualified privilege when he made the statements and therefore his remarks were not actionable, absent proof of malice and special damages.
At the outset it should be recalled that the cause comes here on a judgment based on a directed verdict at the close of the plaintiff's case. We have held that the power to direct a verdict should be cautiously exercised in order to avoid encroaching on a party's right to a jury trial in a common law action. When we consider the correctness of an order directing a verdict for the defendant at the close of the plaintiff's evidence we necessarily must indulge every reasonable inference from the evidence which is favorable to the plaintiff. In order to support a verdict directed by the trial judge at the close of the plaintiff's evidence it should be clear that there is *82 no evidence whatsoever that could in law support a verdict for the plaintiff. Bryan v. Loftin, Fla. 1951, 51 So.2d 724; Hardware Mut. Cas. Co. v. Tampa Electric Co., Fla. 1952, 60 So.2d 179, 40 A.L.R.2d 1293.
It is unnecessary to cite extensive authorities to delineate the distinction between words which are actionable per se as contrasted to those actionable per quod. When words are actionable in themselves, or per se, they are such as necessarily import damage and malice is presumed. When the words are slanderous per se, the offended party is not obligated to prove either malice or special damages in order to sustain his cause of action. Commander v. Pedersen, 116 Fla. 148, 156 So. 337; Tip Top Grocery Co. v. Wellner, 135 Fla. 518, 186 So. 219. In the early development of the law of slander spoken words were considered as slanderous per se only when they imputed to the offended party the commission of some indictable criminal offense. The rule has been expanded. In Campbell v. Jacksonville Kennel Club, Fla. 1953, 66 So.2d 495, 497, we held:
"It is established in most jurisdictions that an oral communication is actionable per se  that is, without a showing of special damage  if it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office, or (d) the other being a woman, acts of unchastity. See Restatement, Torts, Section 570."
See also Newell's Slander and Libel, 4th Ed., Sec. 4; and Loeb v. Geronemus, Fla. 1953, 66 So.2d 241.
Referring back to the statements allegedly made by Mr. Rule, it is clear that the words used in paragraphs 2 and 3 of the quoted statements fall within the category of defamatory words which would prejudice the appellant in his trade as a plumber if falsely spoken. We are not now concerned with any defense of truth and good motive. This may be an issue if and when this case ultimately goes to a jury but the issue presented on this appeal is the contention of the appellees that the words were spoken under a qualified privilege.
We dismiss from our further consideration of the matter the statement made by Mr. Rule in paragraph numbered 1. By that statement he was merely announcing a fact that if Mr. Teare, a non-Union plumber, remained on the job, the other sub-contractors, who were Union men, would not be allowed to work on the job. There is obviously nothing defamatory about this remark.
The remainder of the alleged slanderous statements, however, falls into a different category. It will be noted that allegedly Mr. Rule told the Flaggs that for the sake of their health they were making a mistake in hiring the non-Union plumber; that his work "is known to be unsatisfactory and will not pass inspection". It was further stated that "Mr. Teare's work has been repeatedly found to be unsatisfactory". These statements obviously had nothing to do with whether Teare was a Union plumber or not a member of the Union. They were a direct reflection on his work as a plumber and if falsely spoken were actionable unless it can be considered that Mr. Rule enjoyed a qualified privilege when he made the statements.
It is well known that the work of a plumber is directly related to the health and well-being of the occupants of the building where the plumbing is done. When a man is engaged in a highly specialized trade such as plumbing we can think of nothing more harmful and defamatory than to publish statements that his work would endanger the health of his *83 employers or that his work has been repeatedly found to be unsatisfactory.
In considering the alleged slanderous nature of particular statements we must consider not only the words used but also the relationship between such words and the status of the individual about whom they were spoken. We are told that in the development of the Old West it was a prologue to gunplay to call a "cowpuncher" a "sheepherder". While the word "sheepherder" is not in itself an offensive or derogatory expression, nonetheless, when directed at one who herded cattle it was deemed to be an offense that justified a challenge with "six guns". So it is in this modern day, when a plumber is accused of doing work that will reflect adversely on the health of his employers or that will not when completed pass inspection by those designated to approve or disapprove his handiwork, the one making such statements should be certain of the truth thereof and his remarks should not be inspired by ill-motive.
We come to the question of qualified privilege. Appellees assert that Mr. Rule made the statements as the business agent of the Union; that he had a duty to promote the interests of the Union; that he was interested in the subject matter of Teare's work; and that he was, therefore, qualifiedly privileged to make the remarks to the Flaggs. We have discussed the rules applicable to qualified privilege at considerable length in Leonard v. Wilson, 150 Fla. 503, 8 So.2d 12. We deem it unnecessary to delve into the various ramifications of the rule in this opinion. Suffice it to say that in order for a communication to be qualifiedly privileged, it must be made by one who has a duty or interest in the subject matter and to one who has a corresponding duty or interest. In other words, there must be a mutuality of interest or duty or both existing between the person who makes the statement and the person to whom the statement is made. If the statement is qualifiedly privileged and is made without malice, no cause of action accrues to the person about whom the statement is made. In the instant case while it is true that Mr. Rule had a duty to promote the interest of the Union, we can find here present no mutuality of duty or interest on the part of the Flaggs to whom the statement was made. While the general subject of the communication was "plumbing," we think that the mutuality of interests ended at this point. The interest of Mr. Rule was to put Mr. Teare out of the job and compel the employment of Union plumbers. The interest of the Flaggs was merely to have the job done and so far as this record is concerned, they were not the least bit interested whether the plumber who did the job was a Union or non-Union man.
We interpolate by contrast in order to illustrate the rule of qualified privilege that if the Union representative had made the statement in a Union meeting to other Union plumbers then there would have been a mutuality of interest that would have justified the application of qualified privilege protection. Not so, however, where he goes out into the community at large and undertakes to publish clearly derogatory remarks with reference to the non-Union man. We point out again that the question of the truth or falsity of the remark is not made an issue by this appeal. The remarks not being qualifiedly privileged, it then became a jury question to determine whether they were true or false on the basis of the evidence which was before the trial court.
We are not here passing on the ultimate rights of these parties when the cause is fully tried. We here merely hold that the language of paragraphs 2 and 3 of the quoted statements fall within the category of words slanderous per se and that when the statements were made the appellees were not entitled to the benefit of a qualified privilege.
*84 The judgment is reversed and the cause is remanded for further proceedings consistent herewith.
TERRELL, C.J., and THOMAS, ROBERTS and DREW, JJ., concur.