**Matt L. LEAVITT, D.O., Leavitt Management Group, Inc., and Leavitt Medical Group, P.C., Plaintiffs,**

**v.**

**John P. COLE, M.D., Defendant.**

**No. 6:03–CV–154–ORL–31DAB.**

United States District Court,
M.D. Florida,
Orlando Division.

Nov. 17, 2003.

Steven E. Siff, Michael Garrett Austin, McDermott, Will & Emery, Miami, FL, for Plaintiff.

Robin Uricchio Byrd, Christopher Annunziato, Holland & Knight, LLP, Morey Raiskin, Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Janice A. Kelly, Boehm, Brown, Fischer & Harwood, P.A., Orlando, FL, Guy B. Bailey, Jr., Bailey & Dawes, Miami, FL, Andrew K. Stutzman, Jason K. Cohen, Stradley Ronon Stevens & Young, LLP, Philadelphia, PA, for Defendant.

## ORDER

PRESNELL, District Judge.

This case is before the Court on Plaintiffs' Motion to Dismiss Defendant's Counterclaim (Doc. 53), and Defendant's Response thereto (Doc. 59). The Court, having reviewed the parties' submissions and the relevant law, grants in part and denies in part the Motion to Dismiss.

## I. Background[1]

1. The background facts are taken, in part, from Defendant's Counterclaim, which the

Defendant, John P. Cole, M.D. ("Dr. Cole"), practices medicine in the field of hair restoration. From August 2001 to October 2002, Dr. Cole engaged in that business in affiliation with Plaintiffs, Matt L. Leavitt, O.D. ("Dr.Leavitt"), Leavitt Management Group, Inc. ("Leavitt Management"), and Leavitt Medical Group, P.C. ("LMG") (collectively, "Leavitt Affiliates"). Dr. Cole and the Leavitt Affiliates did not amicably part ways.

On December 27, 2002, the Leavitt Affiliates filed a two-count Verified Complaint (Doc. 2) against Dr. Cole alleging causes of action for state-law defamation (libel) and injurious falsehood (trade libel). Subsequently, on September 8, 2003, Dr. Cole filed a four-count Counterclaim against the Leavitt Affiliates. Specifically, Dr. Cole's Counterclaim includes two counts (I and IV) concerning statements that Leavitt Affiliates' representatives allegedly uttered and two counts (II and III) concerning statements that Dr. Leavitt allegedly uttered.

On September 30, 2003, the Leavitt Affiliates filed the instant Motion to Dismiss in which they assert that Dr. Cole's Counterclaim fails to state a claim upon which relief can be granted. They argue that the Counterclaim's allegations are woefully inadequate in light of Florida-law pleading requirements, and to the extent Dr. Cole asserts claims for injurious falsehood or slander *per quod*, Dr. Cole has failed to plead special damage as required by federal law. On October 20, 2003, Dr. Cole responded, asserting that Florida's pleading requirements do not apply in this case, his Counterclaim alleges four claims of *per se* slander, and he need not plead special damage.

## II. Standard of Review

In ruling on a motion to dismiss, a trial court must view the complaint in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED.R.CIV.P. 10(c). *See also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993). The court will take the complaint's allegations as admitted by the defendants and liberally will construe them in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

 If a case is in federal court based on diversity of citizenship, the forum state's law governs the substantive claims, but federal law governs the specificity with which to allege them. *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir.1986) (citations omitted). Although a forum state may apply a heightened pleading requirement, a federal court should, with limited exceptions, look instead to Federal Rule of Civil Procedure ("Rule") 8(a), which requires simply that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a); *Caster*, 781 F.2d at 1570. Generally, a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. A slander claim may suffice if it sets forth the allegedly slanderous statement and generally describes the manner and to whom it was uttered. *See Caster*, 781 F.2d at 1570.

## III. Analysis

 At issue is the proper characterization of the claims set forth in Dr. Cole's

Court must accept as true for purposes of this Order.

Counterclaim and, further, whether those claims have been pleaded with the requisite level of specificity.

 The claim of injurious falsehood traditionally involves damage to a property interest, while the claim of slander involves damage to a person's personal reputation. *See Old Plantation Corp. v. Maule Indust. Inc.*, 68 So.2d 180, 181–82 (Fla.1953) (comparing "slander of title"[2] with "slander"). Although closely related, *id.*, these claims may meaningfully be distinguished.

 Injurious falsehood essentially concerns "intentional interference with another's economic relations." *Salit v. Ruden, McClosky, et al., P.A.*, 742 So.2d 381, 386 (Fla. 4th DCA 1999). Although the cause of action developed to redress damage to property, it also redresses damage to business interests from disparagement reflecting upon the business' existence or character, or the manner in which the business is conducted. *See id.* at 387–88 (citing W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 128 at 966 (5th ed.1984)).

 Slander concerns damage to personal reputation. In this regard, a false statement is slanderous *per se:*

if, when considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession.

*Richard v. Gray*, 62 So.2d 597, 598 (Fla. 1953) (citations omitted). For instance, a statement tending to injure one in his trade or profession is a falsehood directed at a person's professional competence or fitness to engage in a given profession. *See White v. Fletcher*, 90 So.2d 129, 131 (Fla.1956); *Campbell v. Jacksonville Kennel Club.*, 66 So.2d 495, 497 (Fla.1953); *see also* 19 FLA. JUR. 2d *Defamation and Privacy* §§ 33–34.

Under the common law,[3] the nature of a claim affects the specificity required to plead it properly. For instance, whether one must plead special damage depends on if the person's claim concerns slander *per se* or, alternatively, it concerns slander *per quod* or injurious falsehood.

 On one hand, there is the claim of self-evident (*per se*) slander, for which damages are presumed. *See Commander v. Pedersen*, 116 Fla. 148, 156 So. 337, 340 (1934), *overruled in part on other grounds,* *Campbell*, 66 So.2d at 498. As exemplified above, the fact that injury to a person's reputation results from *per se* slander is a fact of common notoriety of which courts take judicial notice; *per se* slander necessarily imports damage. *Id.* at 341. Consequently, under the common law, a claim for *per se* slander can stand without pleading or proof of actual (economic) damage. *See id.*

 On the other hand, there are the claims of slander in context (*per quod*) and injurious falsehood, for which damages are not presumed. Slander *per quod* does not necessarily import damage; the words on their face in their usual and natural signification are not injurious, but are injurious only as a consequence of extrinsic facts, such as innuendo. *See Piplack v. Mueller*, 97 Fla. 440, 121 So. 459, 459 (1929). Like-

---

**2.** "Injurious falsehood" is also known as "slander of title." *Collier County Pub. Co., Inc. v. Chapman*, 318 So.2d 492, 494 (Fla. 2d DCA 1975) (citing W. PROSSER, LAW OF TORTS 915 (4th ed.1971)).

**3.** This analysis refers to the common law in the present tense because to the extent it has not been abrogated by statue, it remains the law of Florida. Florida law, furthermore, still follows to some extent the heightened pleading requirements of the common law. *See Caster,* 781 F.2d at 1570

wise, to state a claim for injurious falsehood, that is, a claim for defamation of property, has, under the common law, required special damage to be pled, presumably because damage derives only from context, e.g., the sale of property.[4] *See Salit,* 742 So.2d at 388. But to say that for claims of slander *per quod* and injurious falsehood the common law requires special damage to be pled begs the question: what, according to the common law, is "special damage"?

Under the common law, "special damage" does not denote a singular concept, nor does it engender a set pleading requirement. This is evident from the survey of the common law in *Ratcliffe v. Evans,* [1892] 2 Q.B. 524, 528, 531. There, a British appellate court found specifically in regard to slander *per quod* and injurious falsehood that "special damage," from among the term's various uses, means actual loss. *Id.* 528–29. The court held that the degree of specificity with which the actual loss ought to be pled depends on what is reasonable under the circumstances. *Id.* at 531–33. In this regard, the court indicated that if it is reasonably possible to identify specific customers whose business was lost, the customers names should be pleaded; if that is not practicable, specific allegations showing a decline in an established business' receipts is sufficient. *See id.*

*Ratcliffe's* holding entered federal-court jurisprudence with *Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories,* 17 F.2d 255, 259 (8th Cir.1926). Directly or indirectly, several injurious falsehood cases have cited *Erick Bowman* for its iteration of *Ratcliffe's* pleading requirements. *See,*

e.g., *Browning v. Clinton,* 292 F.3d 235, 245–46 (D.C.Cir.2002); *Schoen v. Washington Post,* 246 F.2d 670, 672 & n. 3 (D.C.Cir.1957); *Testing Sys., Inc. v. Magnaflux Corp.,* 251 F.Supp. 286, 291 (E.D.Pa.1966). The Seventh Circuit has properly recognized, however, that *Erick Bowman* predated the adoption of the Federal Rules of Civil Procedure. *Continental Nut Co. v. Robert L. Berner Co.,* 345 F.2d 395, 397 (7th Cir.1965). This Court must follow the Federal Rules. *Caster,* 781 F.2d at 1570.

For general pleading purposes, Rule 8(a)(2) requires a pleading to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Rule 9(g) provides, however, that "[w]hen items of special damage are claimed, they shall be specifically stated." *Id.* 9(g). Again, but in the context of the Federal Rules, this begs the question: what is "special damage"?

Although Rule 9(g) has been interpreted to apply to claims of slander *per quod* and injurious falsehood, *see, e.g., Browning,* 292 F.3d at 245–46, that interpretation appears flawed in light of modern pleading practice. In *Browning,* the court failed to recognize what *Ratcliffe,* and accordingly the common law, means by "special damage." *See id.* at 245. In the context of slander *per quod* and injurious falsehood, "special damage" denotes more the cause of action for actual loss, than the remedy of damages. *See Ratcliffe,* 2 Q.B. at 528, 531–33. Ultimately, *Ratcliffe* addresses the certainty and particularity with which the common law insists that facts be pled to support the claim for actual loss:

---

4. Property does not have a reputation in the sense of a natural person. *See Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories,* 17 F.2d 255, 257 (8th Cir.1926). Generally, property's repute is valuable only in a transactional sense. *See id.* This seems particu-

larly evident from the requirement that a shareholder alleging injurious falsehood must, instead of pleading diminution in stock value, plead "realized loss," i.e., the shareholder sold the stock at a loss. *See Salit,* 742 So.2d at 388.

**1344**

As much certainty and particularity must be insisted on, both in pleading and proof of damage, as is reasonable, having regard to the circumstances and to the nature of the acts themselves by which the damage is done. To insist upon less would be to relax old and intelligible principles.

*Id.* In this regard, *Ratcliffe* reflects the common law's insistence on fact pleading, *id.,* an insistence that is now the exception, not the rule, in federal court, *see* FED. R.CIV.P. 8(a)(2), (9)(b).

Rule (9)(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* 9(b). Contrast that wording with Rule 9(g), that requires, *"[w]hen items* of special damage are claimed, they shall be specifically stated." Id. 9(g) (emphasis added). Rule 9(g) should be read as remedy-focused—a requirement that parties specify the *types* of "special damage" they seek to recover. *See e.g., Botosan v. Fitzhugh,* 13 F.Supp.2d 1047, 1053 (S.D.Cal.1998) (finding emotional distress and attorney's fees items of special damage for purposes of Rule 9(g) in an Americans with Disabilities Act case). To this end, *Ratcliffe* is again instructive.

*Ratcliffe* warns that the term "special damage," "which [is] intelligible enough in particular contexts, tends, when successively employed in more than one context and with regard to different subject-matter, to encourage confusion in thought." *Ratcliffe,* 2 Q.B. at 529. With this in mind, the court distinguished three common law

conceptualizations of "special damage." *Id.* at 528–29. Each has been subsumed by a different Federal Rule requirement.

First, "special damage" may denote a standing requirement for jurisdictional purposes: the necessity of alleging individualized loss, apart from loss experienced by the general public. *Id.* In this regard, the Federal Rules require that a pleading set forth "a short and plain statement of the grounds upon which the court's jurisdiction depends...." FED.R.CIV.P. 8(a)(1).

Second, "special damage" may, as in the case of slander *per quod* and injurious falsehood, denote the gist of a claim for actual economic loss "called variously in old authorities ... 'particular damage' [or] ...'special or particular cause of loss'...." *Ratcliffe,* 2 Q.B. at 528, 531–32 (citations omitted). In this regard, the Federal Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2).[5]

Third, "special damage" may denote the particular damage beyond the ordinary or general damage resulting from invasion of a plaintiff's right and "for which he ought to give warning in his pleadings in order that there may be no surprise at the trial." *Ratcliffe,* 2 Q.B. at 528. In this regard, the common law appears concerned with proper notice, a concern that the Federal Rules most likely address with the following requirement: "When items of special damage are claimed, they shall be specifically stated." FED.R.CIV.P. 9(g).

This Court thus views Rule 9(g) as concerned with giving proper notice of certain types of damage.[6] Although it might yield

---

**5.** Since damages are not presumed in these cases, the claim must include an allegation that the wrongful conduct caused actual economic loss.

**6.** To be sure, this is a fairly narrow reading of Rule 9(g), but enough concern existed to warrant a recently added requirement of initial disclosures in regard to damages. FED.

R.CIV.P. 26(a)(1)(C). Before that requirement, Rule 9(g) was perhaps the best means of ensuring that an unwitting defendant not be blindsided by claims for certain types of damages not explicitly pled. Prejudice to such a defendant would have weighed against allowing amendment of the pleadings to conform with the evidence at trial, *see id.* 15, and might have barred recovery of the unpled

greater notice in some instances if Rule 9(g) were read to require pleading facts with particularity for certain claims, more probably, it would simply provide convenient legal grounds to block tenuous claims before discovery, *e.g., Browning,* 292 F.3d at 245–46. This latter use appears inconsistent with Rule 1 and modern concepts of notice pleading. *See* FED.R.CIV.P. 1, 8(a); *Conley,* 355 U.S. at 47, 78 S.Ct. 99; *Caster,* 781 F.2d at 1570. The Court concludes, therefore, that to state a claim for slander *per quod* or injurious falsehood a party need only meet Rule 8's liberal pleading requirements.[7]

### A. Claims Against the Leavitt Affiliates

■ *Count I.* Dr. Cole alleges in Count I that: (1) representatives of the Leavitt Affiliates informed Dr. Cole's prior patients that Dr. Cole had retired and ceased performing hair transplant surgery; (2) this statement was false and the representatives knew it to be false upon its utterance; (3) the statement was intended to influence persons to refrain from seeking Dr. Cole's services; and (4) as a result of the statement, Dr. Cole suffered a loss of patients and patient referrals. Dr. Cole's Counterclaim does not specify the nature of the claim asserted in Count I.[8]

■ Under Florida law, a claim of slander involves injury to one's personal reputation. *See White,* 90 So.2d at 131; *Campbell,* 66 So.2d at 497; *see also* 19 FLA. JUR. 2d *Defamation and Privacy* §§ 33–34. Although it is conceivable that Dr. Cole

complains in Count I of some innuendo associated with the statement regarding his retirement,[9] this would, at best, render the claim as one for slander *per quod. See Piplack,* 121 So. at 459. The most natural reading of Count I, however, is as a claim for injurious falsehood, which involves injury to property or some advantageous relation. *See Salit,* 742 So.2d at 387–88; *Ratcliffe,* 2 Q.B. at 524–25, 529, 532.

The allegations in Count I describe acts from which certain damages are natural and imminently foreseeable. A patient who has received treatment from a specific doctor at a clinic would very likely be dissuaded from continuing to seek or recommend his services if the clinic staff said the doctor retired. This is precisely the damage Dr. Cole has alleged, and it is best known to the Leavitt Affiliates which returning patients were told Dr. Cole had retired. The Court, therefore, finds that Count I gives more than sufficient notice of a claim for injurious falsehood.

■ *Count IV.* Dr. Cole alleges in Count IV that representatives of the Leavitt Affiliates made various false and *per se* slanderous statements about Dr. Cole. Essentially, Dr. Cole alleges that representatives of the Leavitt Affiliates: (a) told one of Dr. Cole's patients that the Leavitt Affiliates released Dr. Cole because the quality of his work was not good and he rushed through his procedures; (b) told one of Dr. Cole's patients not to seek Dr. Cole's services because the Leavitt Affiliates had to perform numerous corrective surgical pro-

---

damages. Under the current Federal Rules, however, the Court can only wonder what, if any, purpose Rule 9(g) still serves.

7. The Court vacates its May 12, 2003 Order (Doc. 29) requiring "special damage" to be pled.

8. Although Dr. Cole argues in his brief that these allegations properly set forth a claim for

slander *per se,* a party's brief does not constitute or alter any part of a pleading.

9. For example, it is possible that the statement was made in such a way as to imply that, due to a lack of fitness to perform hair transplant surgery, Dr. Cole did the public a favor by retiring.

cedures on Cole's prior patients; (c) masqueraded as representatives of Dr. Cole in calling one of Dr. Cole's patients to schedule a follow-up appointment after the Leavitt Affiliates and Dr. Cole dissolved their association; and (d) at the Leavitt Affiliates' Washington, D.C. office, made derogatory statements about Dr. Cole's services to his patients. Count IV fails to allege damage.

Of Count IV's allegations, only paragraphs (a) and (b) sufficiently give notice of slander *per se*. The statements they describe strike at Dr. Cole's professional competence and fitness to engage in his profession. *See Auld v. Holly*, 418 So.2d 1020, 1027–28 (Fla. 4th DCA 1982). Although the context of those statements may limit the extent of their damage, neither general nor special damages need be pled to support those claims. *See Commander*, 156 So. at 341.

▮▮▮ The remaining allegations in Count IV, however, fail to plead even a "short and plain statement of *the claim* showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) (emphasis added). The masquerading described in paragraph (c), rather than reflecting on Dr. Cole's personal reputation, appears to raise an incomplete claim for fraud. Paragraph (d) essentially turns on a conclusion that certain unknown statements were "derogatory." That paragraph fails reasonably to give notice of the allegedly slanderous statements, *see Caster*, 781 F.2d at 1570, or to demonstrate that they constitute *per se* slander. If Dr. Cole wishes to pursue claims based on the matters alleged in paragraphs (c) and (d), he must re-plead Count IV.

## B. Claims Against Dr. Leavitt[10]

▮▮▮ *Count II.* Dr. Cole alleges in Count II that Dr. Leavitt committed slander *per se* in telling various members of the American Board of Hair Restoration Surgery that he received more complaints about Dr. Cole from patients than about any other doctor he ever had on his staff. Under Florida law, "even though the full impact of an alleged defamatory communication must be shown by allegations of inducement, colloquium and innuendo, it is nonetheless actionable per se ... if [it impugns a person's professional competence or fitness to engage in a given profession]." *Campbell*, 66 So.2d at 498; see also *White*, 90 So.2d at 131; 19 Fla. Jur. 2d *Defamation and Privacy* §§ 33–34. In light of this standard, the Court interprets the allegations in Count II to set forth a claim for slander *per se*. As such, Dr. Cole need not have pled general or special damages to support Count II. *See Commander*, 156 So. at 341.

▮▮▮ *Count III.* Finally, Dr. Cole alleges in Count III that Dr. Leavitt committed slander *per se* in telling two doctors that Dr. Cole "had tax problems with the IRS." Under Florida law, this statement, even given a most favorable interpretation, fails to impugn Dr. Cole's professional competence or his fitness to perform hair transplant surgery. *See White*, 90 So.2d at 131; *Campbell*, 66 So.2d at 497; see also 19 Fla. Jur. 2d *Defamation and Privacy* §§ 33–34. Yet although it does not state a claim for slander *per se*, Count III explicitly alleges the appropriate elements, *inter alia* damage, to state a claim for injurious falsehood.

10. Counts II and III, on their face, do not allege claims against Leavitt Management or LMG. Although it does not appear to be Dr. Cole's intent to hold those entities responsible for Dr. Leavitt's alleged statements, if Dr. Cole wishes to pursue such claims, he must re-plead Counts II and III to state some predicate for vicarious liability. The following discussion concerns only whether Counts II and III are sufficient to state a claim against Dr. Leavitt.

## IV. Conclusion

For the foregoing reasons, it is

**ORDERED** and **ADJUDGED** that the Motion to Dismiss (Doc. 53) is **DENIED in part and GRANTED in part.** The Motion is **DENIED** as to Count I, as to paragraphs (a) and (b) of Count IV, and to the extent Counts II and III are directed against Dr. Leavitt. The Motion is **GRANTED** and the Counterclaim (Doc. 49) is **DISMISSED** without prejudice as to paragraphs (c) and (d) of Count IV and to the extent Counts II and III are directed against the Leavitt Affiliates. If Dr. Cole wishes to re-plead these matters, he must do so within 20 days.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this _____ day of November, 2003.