ST. JAMES MILITARY ACADEMY, *Appellant*, v. GAISER *et al.*

Division Two, December 18, 1894.

1. **Corporation**: LIBEL: SLANDER. A corporation may sue for a libel or slander on its business or trade.

2. **Libel**: INJURY TO TRADE OR BUSINESS. A false publication injurious to one in his profession, trade or business is actionable *per se* without proof of special damages.

3. ———: ———: TEACHING DANCING. Words published concerning an institution of learning which is in a prosperous condition, in good repute and well esteemed by its patrons and good citizens, which charge that it teaches and permits dancing in the school and that, therefore, its administration is harmful to the moral and religious interests of the community are actionable *per se*.

St. James Military Academy v. Gaiser.

4. ——: ——: ——: QUESTION FOR JURY: CONSTITUTION. Whether such publication was justifiable on the ground that dancing is immoral, is a question for the jury, who, under the constitution of this state (art. 2, sec. 14) are the judges of the law as well as of the facts in suits and prosecutions for libel.

5. ——: ——: ——: ——. The foregoing constitutional provision does not relieve the court of the duty of passing on the pleadings in the case.

*Appeal from Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED AND REMANDED.

*Silver & Brown* and *C. P. Hess* for appellant.

(1) A corporation may sue for libel or slander against it "in the way of its business or trade." Newell on Slander and Libel, p. 360; *Johnson v. Co.*, 64 Mo. 539. (2) A false imputation made for the purpose of injuring one in his profession or trade is actionable, even though the words may not, strictly speaking, be defamatory. *Morasse v. Brochu*, 151 Mass. 567, at p. 574, and authorities cited; Odgers on Libel and Slander, p. 89, *et seq.* (3) So words are actionable *per se*, which convey an imputation upon one in the way of his profession or occupation, and in such case there need be no averment of special damages. *Morasse v. Brochu*, 151 Mass. 575. (4) The imputation in the publication complained of is *inter alia* that plaintiff had opened a dancing school in its academy building, and was thereby fostering a practice "harmful to the moral and religious interests of the community," and the publication further called upon the friends of religion and good morals to absent themselves from all receptions and other gatherings at plaintiff's school. The above charge is in effect that plaintiff's school has an irreligious and immoral feature and is coupled with a recommendation to the public as

to the same necessarily and injuriously affecting the patronage and prosperity of the school. Such publication is libelous *per se.* *Morasse v. Brochu,* 151 Mass. 567. (5) A libel may be malicious and actionable, even though the motive was a good one, *e. g.,* reformation of morals or manners. *Com. v. Snelling,* 15 Pick. 337; *Jellison v. Goodwin,* 43 Me. 287; *Shurtleff v. Parker,* 130 Mass. 293. Malice does not mean ill-will, but a false and injurious publication without excuse. Cooley on Torts [2 Ed.], p. 245. (6) The existence of malice is a question for the jury, and this is particularly true under our constitutional provision, that the jury under the direction of the court "shall determine the law and the fact." Const., art. 2, sec. 14; *State v. Armstrong,* 106 Mo. 395. The constitutional provision by its very language obviously applies to civil actions as well as to criminal prosecutions, and for that reason the case should have gone to the jury on the question of libel or no libel and other issues of law and fact involved. *State v. Armstrong, supra.* See, also, *Flint v. Co.,* 110 Mo. 492. (7) In civil actions it is only "where the court can say that the publication is not reasonably capable of any defamatory meaning and can not reasonably be understood in any defamatory sense that the court can rule as a matter of law that the publication is not libelous and withdraw the case from the jury or order a verdict for the defendant." *Twombley v. Monroe,* 136 Mass. 464; *McGinnis v. Knapp,* 109 Mo. 131; *Teachy v. McKenna,* 4 Irish Com. Law Rep. 374. Here the plaintiff was expressly charged with conducting an immoral business. (8) Words are more readily actionable in libel than in case of slander and this is specially true in a case like this one, where the injurious matter is designedly published in public newspapers, with the expressed intention of giving it a wide public circulation. *McMurry*

*v. Martin*, 26 Mo. App. 437; Cooley on Torts [2 Ed.], p. 239, *et seq.* (9) The prefatory matter alleged in the petition sufficiently shows the meaning and actionable character of the publication complained of, if indeed such was necessary. *Legg v. Dunleavy*, 80 Mo. 558. (10) The false and libelous character of the publication in this case consists: *First.* In charging the plaintiff with "the opening of a dancing school in the academy building," whereas (as stated in the petition) it did not open a dancing school, but merely permitted some of the students who so desired to hire a dancing teacher and to take lessons from him in the terpsichorean art, and, *second*, in charging the dancing to be immoral and irreligious, and that the school was not worthy of public patronage, when in point of fact such is not the case—and thereby injuring plaintiff in its business. *Morasse v. Brochu*, 151 Mass. 567, *supra.* (11) It follows from what is above set forth that the motion to strike out part of defendant's answer should have been sustained. *Morasse v. Brochu*, 151 Mass. 567; *Com. v. Snelling*, 15 Pick. 337; *Jellison v. Goodwin*, 43 Me. 287; *Shurtleff v. Parker*, 130 Mass. 293; *Twombley v. Monroe*, 136 Mass. 464.

*Dysart & Mitchell* for respondents.

(1) The petition in this case is drafted on the theory that the publication is libelous and defamatory *per se.* No special damage is alleged, and no proof of special damage could be received under the petition. Newell on Defamation, Slander and Libel, p. 849, *et seq; Salvatelli v. Ghio*, 9 Mo. App. 155. And the special damage must be set out with sufficient particularity. *Herman v. Bradstreet Co.*, 19 Mo. App. 227; 13 Am. and Eng. Encyclopedia of Law, 434. (2) In the publication complained of there is no intimation or

hint that the dancing permitted or practiced in the school was of an improper character. Giving to the words of this publication their evident meaning, they fall within no definition of libel ever promulgated in a statute, text-book or decided case. *McGinnis v. Knapp*, 109 Mo. 131. In the following cases the publications were much more serious, but held to be not libelous. *Baldwin v. Walser*, 41 Mo. App. 243; *Legg v. Dunleavy*, 80 Mo. 558. (3) Even if dancing had been prohibited by law and made a felony or misdemeanor and the publication had been clearly libelous and defamatory, yet the truth of the publication was and is a perfect defense both in a civil action and in a criminal prosecution. R. S. 1889, secs. 3872, 2081; Am. and Eng. Encyclopedia of Law, p. 394. (4) The point and argument made by the appellant that in all events the case should have gone to the jury, on the question of libel or no libel, *i. e.*, cause of action or no cause of action, is untenable. The constitutional provision and rule invoked was made for the protection of a defendant, the person accused of libel, and for the more enlarged liberty of the press; not to aid a plaintiff in a civil action. The doctrine contended for would work an inhibition upon the trial court to sustain a demurrer to the petition in libel suits, no matter how frivolous the charge, or the publication complained of. "Section 14, article 2, of our constitution is but a rescript of section 1, Fox's libel act." *State v. Armstrong*, 106 Mo. 419. "And the English courts make a broad distinction in prosecutions for criminal libel and all other cases as to the province of court and jury." s. c., at p. 420. In the case of *McGinnis v. Knapp*, 109 Mo. 131, a demurrer to the petition was sustained. The case was reversed and remanded by this court, for the reason that the petition did in fact state a cause of action. Nowhere is it intimated that the case ought to

have gone to the jury to settle the question of libel or no libel. The petition was held sufficient on demurrer, otherwise it would have been affirmed.

BURGESS, J.—This is an action for libel by plaintiff, a corporation and institution of learning and education, against the defendants. The charge in the petition is that plaintiff permitted dancing in its school building at receptions given occasionally in each year, and permitted its students to employ, of their own accord and at their own expense, a teacher to instruct them in the art of dancing, and that defendants published of, and concerning, plaintiff and its said school and academy, a certain false, malicious and defamatory libel, charging plaintiff with conducting and maintaining an "immoral school," a "dancing school," "harmful to the moral and religious interests of the community," "hurtful to the moral and spiritual well-being of the community," and calling upon friends of religion and good morals to absent themselves from plaintiff's school and gatherings at its academy.

The defendants, who were resident clergymen of the city of Macon, published the following:

"At the meeting of the Ministers' Alliance, of Macon, Missouri, on January 25, 1893, the following paper was unanimously adopted:

"*Whereas*, The St. James Military Academy of this city, a school formerly under the control of the Episcopal church, at the beginning of this school year, announced itself as a 'Non-Sectarian Christian Institution,' and under the present administration there is fostered a practice, viz., dancing, which is antagonistic to the teaching of our churches and homes, the superintendent and others connected with the institution using their influence to draw the young people of our churches and homes into the practice, which we believe

and teach to be hurtful to the moral and spiritual well-being of all engaging in it; and,

"*Whereas*, We have respectfully requested, first, the superintendent of the school, and, second, the board of curators, that the aforesaid practice be discontinued so as to enable us to lend our *influence toward the building up of an institution of learning worthy of the patronage of all our people;* our request having been ignored, and it being the apparent purpose of those in control of the institution to continue such objectionable practice, as evidenced by the opening of a dancing school in the academy building;

"*Therefore, be it resolved:* First, that we regard the institution under such administration as *harmful to the moral and religious interests of our community*, and on this ground we hereby withdraw any influence or commendation we have heretofore given it; second, that we urge upon *the members of our churches and all friends of religion and good morals*, that they absent themselves from, and discourage and discountenance in every way, all receptions and other gatherings at the academy as long as dancing is allowed in the building; third, that a copy of these resolutions be given to each of our city papers, with a request for its publication, and, also, that a copy be sent each of our church papers in this state with the same request.

"J. M. GAISER,
"Pastor of the Cumberland Presbyterian Church.
"W. F. McMURRAY,
"Pastor of the M. E. Church, South.
"T. J. ENYEART,
"Pastor of the M. E. Church.
"W. H. BARNES,
"Pastor of the First Baptist Church.
"DUNCAN BROWN,
"Pastor of the First Presbyterian Church."

The foregoing matter is, with proper innuendoes, charged in the petition to be false and malicious. The defendants answered, admitting the publication complained of and pleading its truth.

Defendants further set up specially, in substance, that plaintiff had hired and procured a dancing master and gave instructions in that art in its school; that when plaintiff's school was opened defendants' good will and co-operation in its purpose were invited by plaintiff and the same were given by defendants; that the latter, and the Christian denominations to which they belong, are conscientiously opposed to dancing; that defendants requested plaintiff to discontinue the objectionable feature of dancing at its school, which plaintiff refused to do; that the publication complained of was not false nor libelous, but was made by defendants in the conscientious discharge of a duty which they had the legal and moral right to perform.

The defendants further state that the publication was not made concerning plaintiff, but of another institution which had succeeded plaintiff in the management of the school.

The plaintiff first moved to strike out all of the foregoing special defense, except that part contained in the last paragraph, *supra*. This motion the court overruled and plaintiff duly excepted. Plaintiff filed a reply in the form of a general denial, and, the cause coming on for trial before a jury, defendants objected to the introduction of any evidence by plaintiff and the court sustained the objection. Plaintiff then took a nonsuit with leave to set the same aside. The motion to set aside the nonsuit and to grant a new trial was duly made and overruled, and plaintiff excepted. Plaintiff thereupon perfected its appeal to this court.

The questions presented for review arise, *first*, on the action of the court in refusing to sustain plain-

tiff's motion to strike out part of the answer; and, *second*, on the refusal of the trial court to permit plaintiff to introduce any evidence in support of its petition. No special damages were alleged, nor was it alleged that patrons of the academy had withdrawn their support, or that any person had since refused to patronize it on account of the publication.

The right of a corporation to sue for libel or slander against it, in the way of its business or trade is not questioned. That such a suit might be maintained, was held by this court in *Johnson v. St. Louis Dispatch Co.*, 65 Mo. 539. See, also, Newell on Defamation, Slander and Libel, p. 360.

The question then is, whether the words complained of are actionable *per se* as containing a defamatory imputation upon the plaintiff, or, rather, whether or not there was enough in them to warrant the court in submitting them to the jury. In the publication there is no statement or insinuation that the dancing, permitted or practiced at the academy, was of an improper character.

Words which on the face of them when falsely published of a party in connection with his trade or profession, which must necessarily injure him with respect thereto, or which directly tend to the prejudice of such person in his trade or business, are actionable in themselves without proof of special damages. Newell on Defamation, Slander and Libel, sec. 1, p. 168; *Morasse v. Brochu*, 151 Mass. 567; *Price v. Conway*, 134 Pa. St. 340; Odgers on L. and S. [2 Ed.], p. 65, and authorities cited; *Williams v. Davenport*, 42 Minn. 393; *Railroad v. Richmond*, 73 Tex. 568; *Sanderson v. Caldwell*, 45 N. Y. 398; *Hayes v. Press Co.*, 127 Pa. St. 642; *Collins v. Dispatch Publishing Co.*, 152 Pa. St. 187.

Measured by the rule thus announced, were the

words published of, and concerning, plaintiff libelous and actionable *per se?* That they were published of, and concerning, its business there is no question. It was, at the time of the alleged publication, an institution of learning and education, and prior thereto, as alleged in the petition, in a flourishing condition, in good repute and well thought of by all of its patrons and good citizens, and we can not perceive how to publish of it, by implication, at least, that it was not worthy of the patronage of the people, and in express terms to say that its administration was harmful to the moral and religious interest of the community, was otherwise than hurtful, being calculated, as it was, to induce the patrons of the school to withdraw their patronage therefrom and to dissuade others not to patronize it who may have been inclined to do so but for the immoral imputations cast against it by defendants. The charges were hurtful both to plaintiff's standing as an educational institution, and in a financial point of view; for some persons, even though not opposed to dancing, might be found who would hesitate to patronize such an institution of learning where dancing was permitted if, by reason thereof, they might be criticised for patronizing an immoral institution.

In *Cooper v. Greeley*, 1 Denio, 358, the rule is thus announced by JEWETT, J.: "It is the duty of the court in an action for a libel, to understand the publication in the same manner as others would naturally do. 'The construction which it behooves a court of justice to put on a publication which is alleged to be libelous is to be derived as well from the expressions used as from the whole scope and apparent object of the writer.' "

We understand the principle to be in that case correctly announced, to wit, the scope and object of the whole article is to be read and considered together,

and such construction put upon the language used as would naturally be given to it, and when this is done it seems to us that the article, taken as a whole, is susceptible of no other fair construction than as containing an imputation upon plaintiff's morality, in respect to permitting dancing in its academy, and that its tendency was to injure plaintiff in its standing as an institution of learning and education.

Whether the publication complained of when taken and read altogether was justifiable upon the ground that dancing is immoral is a question to be passed upon by a jury, who under our constitution are the judges of the law, as well as of the fact, in cases of this character. From a libelous publication malice is implied. *Byam v. Collins*, 111 N. Y. 143; *Bradstreet Co. v. Gill*, 72 Tex. 115; *Ramsey v. Cheek*, 109 N. C. 270; *Mitchell v. Bradstreet Co.*, 116 Mo. 226.

It is also contended by plaintiff that, as section 14, article 2, state constitution, provides, "that in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact," whether or not the dancing was immoral was a question to be determined upon proper proof by the triers of fact. While it is true that in case of a prosecution for libel the jury are the judges of both the law and the fact (*Arnold v. Jewett, ante*, p. 241). It has never been understood that it was their duty or their province to pass upon the pleadings in the cause. In *McGinnis v. Knapp*, 109 Mo. 131, a demurrer to the petition was sustained by the court below upon the ground that it did not state a good cause of action, and upon appeal the judgment of the court was reversed, but nowhere is it intimated in the opinion of this court that the case ought to have gone to the jury upon the question as to whether or not the petition stated a good cause of

action. If this contention is correct the judge of the court, is but a mere figure-head, a useless, and unnecessary ornament, in the trial of such cases. We are unable to give our assent to this contention.

Our conclusion is that the court did not err in overruling plaintiff's motion to strike out that part of defendants' answer which set up a special defense, but that it committed error in sustaining defendants' objection to the introduction of any testimony under the petition which stated a good cause of action. The judgment is reversed and the cause remanded. All of this division concur.