## SECURITY BENEFIT ASS'N v. DAILY NEWS PUB. CO.

(Circuit Court of Appeals, Eighth Circuit. May 12, 1924.)

No. 6355.

1. **Libel and slander ⊜═9(1)—To constitute actionable libel of corporation, publication must be such as per se to injure its business.**

    Before a publication respecting a corporation can be held libelous per se, it must appear that the words complained of, standing alone, without the aid of extrinsic evidence, directly injure the property or business of the corporation and cause pecuniary loss.

2. **Libel and slander ⊜═101(1), 123(2)—Corporation must prove article libelous per se; ambiguous article presents jury question.**

    To entitle a corporation to recover for libel, it must show that the article complained of is libelous per se, and if the language is capable of two meanings it is a question for the jury to determine which of the two would be given it by the readers to whom it was addressed.

3. **Libel and slander ⊜═9(1)—Publication held libelous per se.**

    An article published in a newspaper, falsely charging that plaintiff, an incorporated benefit association having a large membership in the terri >ry in which the paper circulated, had a large number of unpaid claims, amounting to several hundred thousand dollars, that it made false re ports, and that the public officers of the state were about to investigate its condition, *held* libelous per se.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action at law by the Security Benefit Association against the Daily News Publishing Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Smith, Schall, Howell, Howard & Sheehan, of Omaha, Neb., and A. W. Fulton, of Chicago, Ill., for plaintiff in error.

Gurley, Fitch & West, of Omaha, Neb., for defendant in error.

Before LEWIS, Circuit Judge, and SYMES and PHILLIPS, District Judges.

SYMES, District Judge. This is an action for libel brought by the Security Benefit Association, plaintiff here and below, against the Daily News Publishing Company, defendant here and below. The lower court sustained the defendant's demurrer to the amended petition. Plaintiff refused to plead further, and judgment was entered in favor of the defendant. Plaintiff sued out this writ of error. The assignments of error raise the one question of the correctness of the lower court's ruling on the demurrer.

The amended petition, which, for the purposes of this discussion must be taken as true, shows that the plaintiff is an association organized under the laws of Kansas, carrying on a fraternal insurance business with over 200,000 members, residents of the states of Nebraska, Kansas, Iowa, Missouri, South Dakota, and other states; that the members have, and are paying, assessments on beneficiary certificates issued by it in the amount of many thousands of dollars, and that its reserve fund assets amount to about $2,000,000.

⊜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It alleges that the defendant was and is the owner and publisher of the Omaha Daily News, a newspaper with a large circulation throughout the above-mentioned states. Further, that under the laws of Nebraska applicable to it and similar companies the plaintiff and its business is subject to supervision by the state, and that it was the duty of the Attorney General of the state to investigate charges whenever made against a company such as the plaintiff, and to take proper action if any law of the state is violated, and if necessary take charge of and wind up its affairs. The law also requires the association to file annually a sworn report, showing its true condition, the amount of unpaid claims, benefits, and other information. That on failure so to do it is the duty of the Attorney General to bring an action to enjoin such an association from carrying on business in the state, etc.

It then charges that on September 19, 1921, the defendant wickedly and maliciously printed and published in its newspaper an article in the following words, to wit:

### "Charge Lodge Has 15,000 Unpaid Claims.

"Lincoln, Sept. 19—Investigation of the Security Benefit Association of Topeka, Kas., a fraternal organization formerly known as the Knights and Ladies of Security, was begun to-day by the Attorney General's Office, following charges that the order has 15,000 unpaid claims amounting to $800,000.

"The last report of the order says there are 9,319 members in Nebraska, carrying a total insurance of $11,000,000. The same report represented that the unpaid claims number sixteen, for a total liability of $2,250."

It is alleged that the defendant meant thereby that the plaintiff represented, at the time it filed the report mentioned in the article, that only 16 members of the plaintiff association had accrued claims for insurance money due, amounting to $2,250, and that charges had been preferred against it with the proper state officials to the effect that it had in fact accrued and unpaid claims in favor of 15,000 of its members, aggregating $800,000, and that the number of claims against the association exceeded its total membership in Nebraska; that said charges were pending and under investigation by the Attorney General. It is then charged that the article was false and libelous, in that no investigation of any kind had been begun by the Attorney General, and that no charges had been preferred, and that the statements in its last report referred to were true, particularly in respect to its unpaid claims and the amount thereof.

It is next alleged that the article was published maliciously and with intent to injure the plaintiff in its business, destroy its financial standing, and create doubt in the minds of its members and certificate holders as to its solvency and ability to perform its contracts of insurance, and tended to produce the impression in the minds of the public generally that the plaintiff was unreliable, insolvent, and had willfully made false reports.

[1] It will be observed that the plaintiff is a corporation, so we are concerned only with the law of libel applicable to corporations. We are cited to many authorities in both briefs which declare the proposition of law that, before a publication respecting a corporation can be held libelous per se, it must appear that the words complained of,

standing alone, without the aid of extrinsic evidence, directly injure the property or business activities of the corporation and result in pecuniary loss. Unless this is the necessary effect of the publication, it is not actionable per se. Vitagraph Co. of America v. Ford (D. C.) 241 Fed. 681; Axton-Fisher Tobacco Co. v. Evening Post Co., 169 Ky. 64, 183 S. W. 269, L. R. A. 1916E, 667, Ann. Cas. 1918B, 560; Norske Ameriekalinje v. Sun P. & P. Ass'n, 226 N. Y. 1, 122 N. E. 463; Bee Publishing Co. v. World Publishing Co., 59 Neb. 713, 82 N. W. 28; World Pub. Co. v. Mullen, 43 Neb. 126, 61 N. W. 108, 47 Am. St. Rep. 737; St. James Military Academy v. Gaiser, 125 Mo. 517, 28 S. W. 851, 28 L. R. A. 667, 46 Am. St. Rep. 502; 17 R. C. L. 377; Memphis Telephone Co. v. Cumberland Telephone & Telegraph Co., 145 Fed. 904, 76 C. C. A. 436; Reporters' Ass'n v. Sun Printing & Pub. Ass'n, 186 N. Y. 437, 79 N. E. 710.

The reason for this rule is apparent. A corporation has not a reputation in the sense an individual has, and necessarily the only way the corporate entity can be damaged is by a tort that injures or lessens the value of its property, or affects adversely its business activities or reputation. A very clear and concise statement of the rule is made by Judge Gray in Reporters' Ass'n v. Sun Printing & Pub. Ass'n, supra, as follows:

"That a corporation has the right to maintain an action of libel, when the publication assails its management, or credit, and inflicts injury upon its business, or property, is a proposition which is true upon principle, and which has the support of authority. See Newell on Slander and Libel, p. 360, and cases cited. It is as much entitled to the protection of the law, in those respects, as is the natural person. It differs from the latter, in that it has no character to be affected by a libel; but its right to be protected against false and malicious statements, affecting its credit or property, should be beyond question. There has been some dispute in the cases as to the necessity of setting out the specific damage, which a corporation claims to have suffered from a libelous publication; but I regard the better rule to be that such an averment is not necessary, when the language is of so defamatory a nature as to directly affect credit and to occasion pecuniary injury."

In Norske Ameriekalinje v. Sun P. & P. Ass'n, supra, it is said:

"It is now well settled in this state that a corporation may be the subject of an article which is libelous per se."

[2] Therefore to maintain its case the plaintiff must show that the article complained of was libelous per se as a matter of law; that is, that the readers of the defendant's paper to whom it was addressed would give it a construction that would necessarily result in injury to the credit or property of the corporation, and necessarily occasion damage. If, on the other hand, the court was of the opinion that the words were capable of two meanings, one of which would be libelous, and the other not, then it should submit the case to the jury, and have them determine, after considering the article itself, and such other extrinsic evidence and surrounding circumstances as are material, which of these constructions would be applied to it by those to whom it was addressed. In either event the demurrer should have been overruled.

In Washington Post Co. v. Chaloner, 250 U. S. 290, 293, 39 Sup. Ct. 448, 63 L. Ed. 987, the court said:

"A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item, including display lines, should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable, and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it, by those to whom it is addressed or by whom it may be read."

See, also, Peck v. Tribune Co., 214 U. S. 185, 29 Sup. Ct. 554, 53 L. Ed. 960, Ann. Cas. 1075.

In Gross Coal Co. v. Rose, 126 Wis. 24, 105 N. W. 225, 2 L. R. A. (N. S.) 741, 110 Am. St. Rep. 894, 5 Ann. Cas. 549, after holding that a corporation may sue for a libel or slander upon it in the way of its business or trade, the court says:

"Words spoken of a person in direct reference to his business or trade, which charge him with incapacity, fraud, trickery, dishonorable or mean conduct in the transaction of his business, thereby necessarily tending to injure him in such business, are actionable without proof of special damage."

See, also, St. James Military Academy v. Gaiser, supra; Warner Instrument Co. v. Ingersoll (C. C.) 157 Fed. 311; Sternberg Mfg. Co. v. Miller, Du Brul & Peters Mfg. Co., 170 Fed. 298, 95 C. C. A. 494, 18 Ann. Cas. 69.

[3] In the light of these authorities, the article complained of is libelous per se. It directly attacks the credit, integrity, and business methods of the plaintiff. This is especially so, if we consider the nature of its business, to wit, fraternal benefit insurance and its large membership scattered throughout the several states. The good name and credit of such an organization is as valuable and necessary to it as that of a bank, or any other similar business organization that must obtain and keep to a high degree the confidence of its patrons in particular, and the public in general, as a prerequisite of success.

The plain and obvious meaning conveyed to a person reading this article is that this plaintiff association had an unusual number of unpaid claims amounting to several hundred thousand dollars, with the necessary implication that it was not paying them promptly; that it made false reports on oath; that public officials charged with the supervision of such companies were about to conduct an investigation, which is only done when there is strong reason to believe that the law is being violated; and that it was financially unsound. This would necessarily create alarm and fear among its policy holders and those contemplating taking out insurance. It can bear but one construction. It therefore follows as a matter of law that it was published with intent to injure the plaintiff in its business and pecuniary damage necessarily resulted.

The article being libelous per se, the facts pleaded in the way of innuendo are not necessary, and might have been omitted, as claimed

by the defendant in error. Even so, they are mere surplusage, and do not avoid the construction we have placed upon the petition as a whole. The lower court erred in not overruling the demurrer.

The judgment of the lower court is therefore reversed, and the case remanded for further proceedings in conformity with this opinion.