DIPLOMAT ELECTRIC, INC., Appellant,

v.

WESTINGHOUSE ELECTRIC SUPPLY COMPANY, a DIVISION OF WESTINGHOUSE ELECTRIC CORPORATION, Appellee.

No. 23341.

United States Court of Appeals
Fifth Circuit.

May 29, 1967.

Rehearing Denied Aug. 2, 1967.

Milton E. Grusmark, Natalie Baskin, Harris J. Buchbinder, Miami Beach, Fla., Henry J. Prominski, Miller, Tucker & Roth, Fort Lauderdale, Fla., for appellant.

Richard E. Reckson, Eugene C. Heiman of Heiman & Heiman, Miami, Fla., for appellee.

Before MARIS,* BROWN and THORNBERRY, Circuit Judges.

MARIS, Circuit Judge:

This is an appeal from a summary judgment entered in the District Court for the Southern District of Florida in favor of the defendant, Westinghouse Electric Supply Company, in an action for libel and slander brought by plaintiff, Diplomat Electric, Inc., to recover damages resulting from an allegedly libelous letter and slanderous statements. The defendant answered, denying generally the allegations of the complaint but admitting the mailing of the letter, and in its defense asserted privilege and probable cause. Upon defendant's motion for summary judgment, the district court, after hearing argument and examining the pleadings, affidavits, depositions and pretrial stipulation, held as a matter of law that the letter and the oral statements were not actionable per se. Judgment was entered for the defendant and the plaintiff's cause of action was dismissed. The plaintiff appealed. The complaint alleged that the plaintiff, a Florida corporation engaged as an electrical contractor, and the defendant, a Pennsylvania corporation engaged as a supplier of electrical equipment, had contracted for electrical materials needed by plaintiff on its construction jobs. All the events involved occurred in Florida. On January 5, 1965, defendant's credit manager mailed a letter to plaintiff, with copies to Fred Howland, Inc., the general contractor on one of the construction jobs, to Phillips Petroleum Company, the owner of the project upon which plaintiff was working, and to J. M. Lloyd, project-manager for the owner, containing the following:

"As you know, there is a balance due on your account with us for the subject job of $4,985.23. This account has been delinquent since August, 1964, but we continued to furnish materials for this job through November 1964, relying on your promise that you would pay the balance and then keep your account current.

"You have failed to keep your several commitments and as we previously advised by telephone and letters on September 10, 1964, October 2, 1964, and November 17, 1964. We have stopped fabrication of all materials on order and we will not resume fabrication or make any further delivery of any material on order until this balance is paid in full."

The complaint charged that the defendant libeled the plaintiff's credit and business reputation in that defendant knew that no amount was due; that on the contrary the defendant was delinquent in the fabrication and delivery of the materials fully knowing that plaintiff had time schedules to meet for the installation of the various materials and that failure to maintain the time schedules would reflect severely on plaintiff's business reputation, that it would jeopardize his contract with Howland and result in great loss and damage to plaintiff. It was further alleged that defendant knew that information from a source which was considered reliable would be likely to cause the owners, general contractors and bonding companies to reduce the amounts of legitimate requisitions of payments in an effort to protect themselves against possible loss; to refuse to contract with

* Of the Third Circuit, sitting by designation.

the subcontractor, or refuse for no other reason to bond it. The complaint further alleged that six days later the defendant advised Howland, the general contractor, by telegram to disregard the January 5th letter but still later, in a telephone conversation with Howland's project manager, directed him to disregard the telegram and informed him that the letter was accurate.

The complaint next charged that the defendant damaged plaintiff's business reputation and credit when the defendant's agents told George Kinsman, vice president of Florida Power & Light Company, owner of an office construction project upon which plaintiff was working, and Charles Braznell, president of Wesley Construction Co., the general contractor, that plaintiff owed a past due bill in the amount of $102,000 for fixtures delivered to that office building and that defendant intended to file a claim of lien, knowing that no amount was past due and that defendant had waived its lien rights by executing a final release. As a consequence, the owner refused to pay the requisition due Wesley for work done by plaintiff, Wesley refused to pay plaintiff the sum of $80,000 due, and the job was shut down, all to the great damage to plaintiff's reputation in the construction industry in South Florida.

The complaint further charged that the defendant showed its malice and intention to damage the plaintiff's credit and business reputation in that through its agents, defendant falsely informed Apgar & Markham Construction Co., Inc., the general contractor with whom plaintiff had contracted for electrical work on the Miami Springs High School construction job, that defendant intended to file a lien against the property of the owner, the Board of Public Instruction of Dade County, knowing at the time that defendant had executed a final release and that no sums were owing. As a result, the owner refused to pay the contractor the money due, the contractor in turn refused to pay

plaintiff, and plaintiff's credit and business reputation suffered damage.

Finally, the complaint charged that the defendant demonstrated its malice when its agent notified James Thompson, president of James Thompson, Inc., general contractor on the Hallandale Junior High School job, that plaintiff owed sums past due in an amount which exceeded the balance due plaintiff on completion of the contract, knowing that, at the time, the account was paid in accordance with the terms of the contract. As a result, Thompson refused to pay plaintiff the sums due, demanded a bond which had not been previously required and which was impossible to provide since the job was substantially completed and subsequently caused Thompson to refuse to permit plaintiff to bid on further construction work, which in the absence of the alleged slander plaintiff would have had an opportunity to bid upon.

Under the facts, thus alleged, the district court found that the complaint contained sufficient allegations to indicate that the letter and the statements were false and further that the complaint sufficiently alleged malice with respect to all of the statements. Although the court found falsity and malice, it concluded that no special damage had been alleged as a result of the January 5th letter, or the statement to Howland reaffirming that letter, or the statement to Apgar & Markham Construction Co., Inc. The district court then turned to the question whether the letter and statements were actionable per se and concluded that the information contained in the January 5th letter, which, the court found, was the subject matter of all the alleged slanderous statements, could not be considered to be libelous per se, saying:

" * * * Clearly, a communication by a supplier to a general contractor and owner that a subcontractor has not paid an amount to the supplier is not of such an injurious character

that would necessarily import damage and malice."

In respect to the statements allegedly made to George Kinsman and to Charles Braznell, the district court found that the deposition of George Kinsman established that the statement was never communicated to him. With regard to the statement allegedly made to James Thompson, the court found that the evidence showed that plaintiff received final payment from the general contractor for that job, that plaintiff had in fact bid on other jobs for Thompson and therefore that the plaintiff had not sustained the damage it alleged. Thus finding that the letter and statements, as a matter of law, were not actionable per se and that no special damage had been shown, the district court entered summary judgment for the defendant and dismissed the plaintiff's cause of action.

■■■ Since the alleged defamations were published in Florida the law of that State is controlling. It is well settled in Florida, as elsewhere, that a corporation, just as an individual, may be liable for defamation by its employees.[1] It is equally well settled that the credit, property or business reputation of a corporation can be injured by a false publication of defamatory matter, written or oral, which tends to prejudice it in the conduct of its trade or business, or to deter third persons from dealing with it.[2] Since a corporation has no reputation in the sense that an individual has, it is only with respect to its credit, property or business that a corporation can be injured by a false publication.[3] In determining whether the business reputation of a corporation has been injured, the test is not different from that which would be applied in determining whether an individual's business reputation has been defamed.

■■■ No general rule can be laid down defining absolutely what words are defamatory and what are not. Words which would injure A's reputation, might do no harm to B's. In determining whether or not particular language is defamatory, the particular facts in each case govern and the effect, not the form, of the language is the criterion.[4] As was observed by the Supreme Court of Florida in Adams v. News-Journal Corporation, 1955, Fla., 84 So.2d 549, 551, the "task of testing the effect of the language used is not an easy one because there is no fixed rule that would guide us to a conclusion. The judgment in each case must depend upon the facts peculiar to that case and a search for two identical instances would probably be unrewarded." A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. The language of the publication should not be given a tortured interpretation

1. Restatement, Agency 2d § 247; Axton Fisher Tobacco Co. v. Evening Post Co., 1916, 169 Ky. 64, 183 S.W. 269, L.R.A. 1916E, 667; Baker v. Atlantic Coast Line R. Co., 1939, 141 Fla. 184, 192 So. 606; Hooper-Holmes Bureau v. Bunn, 5 Cir. 1947, 161 F.2d 102, 104–105.

2. Restatement, Torts, §§ 559, 561, 573; Security Benefit Ass'n v. Daily News Pub. Co., 8 Cir.1924, 299 F. 445; Reporters' Ass'n of America v. Sun Printing & Pub. Ass'n, 1906, 186 N.Y. 437, 79 N.E. 710; Maytag Co. v. Meadows Mfg. Co., 7 Cir. 1931, 45 F.2d 299; Aetna Life Ins. Co. v. Mutual Benefit Health & Acc. Ass'n, 8

Cir.1936, 82 F.2d 115; Albert Miller & Co. v. Corte, 5 Cir.1939, 107 F.2d 432; Hartley & Parker v. Copeland, 1951, Fla., 51 So.2d 789; Mississippi River Fuel Corporation v. O'Niell, 5 Cir.1956, 230 F. 2d 265, 267; Atlas Sewing Centers, Inc. v. National Association, 10 Cir.1958, 260 F.2d 803; Annotations 52 ALR 1199; 86 ALR 442.

3. Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, 8 Cir.1926, 17 F.2d 255, 257, 52 A.L.R. 1187.

4. Odgers, Libel and Slander (6th ed.1929) p. 2; 53 C.J.S. Libel and Slander § 9.

but should be construed as the common mind would understand it.[5]

In an action for defamation the plaintiff has the burden of proving the defamatory character of the communication. If the communication is ambiguous, capable of either a meaning which is defamatory or one which is innocent, the plaintiff has the burden of proving that it was reasonably understood in that sense which would make it defamatory. To satisfy this burden, the plaintiff must first convince the court that the communication is capable of the defamatory meaning plaintiff ascribes to it.[6] If the court finds that the ambiguous language is capable of a defamatory meaning then it is for the jury to say whether the words as applied to the plaintiff were in fact a defamation, that is, whether they were understood and taken in a defamatory sense under all the circumstances surrounding its publication, including extraneous facts admissible in evidence.[7] Where the words are thus capable of two meanings and the defamatory character of the communication depends upon extrinsic circumstances, the words are actionable per quod and the plaintiff cannot recover without alleging and proving special damages.[8]

But if the meaning of the publication is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not.[9] The burden is then on the defendant to come forward with its defense.[10] Where the plaintiff proves a false and unprivileged publication the words of which, standing alone, need no explanation and are clearly defamatory, the words are actionable per se. The term "actionable per se" has been defined to mean that when language is used concerning a person or his affairs which from its nature necessarily must, or presumably will, as its natural and proximate consequence occasion him a pecuniary loss, its publication prima facie constitutes an actionable wrong without any allegation or evidence of damage other than that which is implied or presumed from the fact of publication.[11]

It has been said that aspersions on the credit of a business man are clearly defamatory,[12] and words which tend to charge that one is unscrupulous, dishonest and unworthy of confidence,[13] or is improperly exercising his lawful business, trade, profession or office are actionable per se.[14]

Any corporation has the right to maintain an action for libel or slander when a publication assails its management or credit and inflicts injury on its

5. Washington Post Co. v. Chaloner, 1919, 250 U.S. 290, 293, 39 S.Ct. 44863 L.Ed 987; Albert Miller & Co. v. Corte, 5 Cir. 1939, 107 F.2d 432, 434–435; Richard v. Gray, 1953, Fla., 62 So.2d 597, 598.

6. Restatement, Torts §§ 613, 614.

7. Washington Post Co. v. Chaloner, 1919, 250 U.S. 290, 293, 39 S.Ct. 448, 63 L.Ed. 987; Albert Miller & Co. v. Corte, 5 Cir. 1939, 107 F.2d 432, 434–435.

8. Layne v. Tribune Co., 1933, 108 Fla. 177, 146 So. 234, 86 A.L.R. 466; McBride v. Crowell-Collier Pub. Co., 5 Cir.1952, 196 F.2d 187.

9. Washington Post Co. v. Chaloner, 1919, 250 U.S. 290, 293, 39 S.Ct. 448, 63 L.Ed.

987; Sandifer v. Electrolux Corporation, 4 Cir.1949, 172 F.2d 548, 550.

10. Restatement, Torts, § 613.

11. Snavely v. Booth, 1935, 36 Del. 378, 392, 176 A. 649, 655; Restatement, Torts § 621. See, also, Briggs v. Brown, 1908, 55 Fla. 417, 46 So. 325; Metropolis Co. v. Croasdell, 1941, 145 Fla. 455, 199 So. 568; Miami Herald Publishing Co. v. Brautigam, 1961, Fla.App., 127 So.2d 718.

12. Meyerson v. Hurlbut, 1938, 68 App.D.C. 360, 98 F.2d 232, 234, 118 A.L.R. 313.

13. Commander v. Pedersen, 1934, 116 Fla. 148, 156 So. 337.

14. Hevey v. News-Journal Corporation, 1963, Fla.App., 148 So.2d 543.

business.[15] "The authorities fully sustain the conclusion", the court said in Maytag Co. v. Meadows Mfg. Co., 7 Cir. 1930, 45 F.2d 299, 302, "that where a libel contains an imputation upon a corporation in respect to its business, its ability to do business, and its methods of doing business, the same becomes libelous per se, and that special damages need not be alleged. The management and credit of a corporation and its solvency are all most carefully guarded by the law, and imputations against the same, imputing lack of credit, insolvency, or pecuniary difficulties are rightfully deemed of such injurious character as to be actionable per se without allega-tion of special damage. The legal principles constituting the law of libel and slander are the same whether corporations or individuals are involved."

■ Thus, in such a case the law presumes that some damage will flow in the course of things from the mere invasion of plaintiff's rights and calls it general damage, which need not be proved by evidence, and in such a case there is no necessity that the plaintiff show special damage.[16]

With these principles in mind we turn first to the letter of January 5, 1965 which is set out in the margin.[17] The district court found the complaint suffi-

15. Restatement, Torts, §§ 561, 573; Security Benefit Ass'n v. Daily News Pub. Co., 8 Cir.1924, 299 F. 445; National Refining Co. v. Benzo Gas Motor Fuel Co., 8 Cir.1927, 20 F.2d 763, 765, 766, 55 A.L.R. 406; Aetna Life Ins. Co. v. Mutual Benefit Health Acc. Ass'n, 8 Cir.1936, 82 F.2d 115; Hartley & Parker v. Copeland, 1951, Fla., 51 So.2d 789, 791.

16. Restatement, Torts, §§ 558, 559, 569, 621; Montgomery v. Knox, 1887, 23 Fla. 595, 3 So. 211; Briggs v. Brown, 1908, 55 Fla. 417, 46 So. 325; Piplack v. Mueller, 1929, 97 Fla. 440, 121 So. 459; Hooper-Holmes Bureau v. Bunn, 5 Cir. 1947, 161 F.2d 102, 106.

17. "WESTINGHOUSE ELECTRIC SUPPLY COMPANY

\* \* \* \* \* \* \* \* \* \* \* \* \*

January 5, 1965

CERTIFIED MAIL—RETURN RECEIPT REQUESTED
Diplomat Electric, Inc.
7033 N.W.4th Street
Plantation,Florida

Subject: 156 Room Addition to Pier 66 Motor Hotel
2301 S.E.17th Street Causeway
Ft.Lauderdale,Florida

Gentlemen:
As you know, there is a balance due on your account with us for the subject job of $4,985.23. This account has been delinquent since August, 1964, but we continued to furnish materials for this job through November, 1964, relying on your promise that you would pay the balance and then keep your account current.
You have failed to keep your several commitments and as we previously advised by telephone and letters on September 10, 1964, October 2, 1964, and November 17, 1964. We have stopped fabrication of all materials on order and we will not resume fabrication or make any further delivery of any material on order until this balance is paid in full.

Yours very truly,

WESTINGHOUSE ELECTRIC SUPPLY COMPANY

[/s/] Paul E.Yurtinus
Paul E.Yurtinus
Credit Manager

PEY:ep
cc—Phillips Petroleum Company, Bartlesville,Oklahoma
Fred Howland, Inc.,1451 S.W.20th St.
Miami, Fla.
J.M.Lloyd, Pier 66 Motor Motel
Drawer 9177,Ft.Lauderdale,Fla."

ciently alleged that this letter was false. The plaintiff contends that the district court erred in granting summary judgment on this claim and that the court should have found, as a matter of law, that defendant's written communication was libelous per se. The plaintiff argues that the letter was not such as would ordinarily go out in the normal course of a credit manager's job to collect a past due account but that it was obviously sent to others than the plaintiff with the purpose of destroying plaintiff's business reputation and credit rating and to cause the prime contractor and the owner to question plaintiff's ability to finish the job and further to deter other contractors from dealing with the plaintiff.

█ It must be conceded that the words used in the letter were not ambiguous. Their construction, therefore, was for the court. They should be given their plain and ordinary meaning. Certainly the good name and credit of such an organization as the plaintiff's is valuable and necessary to it. The plain and obvious meaning conveyed to the owner of the project, the project manager, and the contractor primarily responsible for the construction job, to whom copies of the letter were mailed, was that plaintiff had failed to meet its financial commitments, that its obligations to the defendant were long overdue and that as a result of its delinquency the work would stop and would not be completed until the plaintiff paid up its delinquent account. Tested by the legal principles heretofore discussed we hold as a matter of law that the letter in question was libelous per se as to the plaintiff and that no special damage was required to be shown.

We come then to the plaintiff's other contention, namely, that the district court erred in holding the oral communications charged in the complaint not to be actionable per se. Although the district court found that the complaint sufficiently alleged that all the statements were false and malicious, nonetheless it concluded that the subject matter of two oral statements was not actionable per se, thus requiring proof of special damage which the complaint had failed sufficiently to allege. As to the remaining two oral statements, the court found as to one that the plaintiff had been paid for the construction job involved and accordingly had suffered no damage as a result of that oral statement, and as to the other, that the statement involved had never been communicated to George Kinsman, vice president of Florida Power & Light Co.

█ The first question we must resolve in this regard is whether different legal principles are applied to false and malicious statements which tend to reflect injuriously on plaintiff's credit and business reputation if the statements are oral rather than written. A distinction has been made between words spoken and those written with respect to their being actionable per se. The reasons usually assigned for this distinction are that the written word is in more permanent form and may be circulated more extensively than the oral word and therefore is calculated to do much greater injury, and, further, that a writing requires deliberation and is therefore more injurious, since a person reducing an accusation to writing is presumed to have satisfied himself of its truth.[18] But it has long been established that oral words are actionable per se if they import a charge that the party has been guilty of a criminal offense involving moral turpitude, or that the party is infected with a contagious disease, or if the party is prejudiced in a pecuniary sense in his office or in his profession or trade.[19] This is the view

---

18. Ostrowe v. Lee, 1931, 256 N.Y. 36, 175 N.E. 505; Restatement, Torts, § 568; 53 C.J.S. Libel and Slander § 8b.

19. Pollard v. Lyon, 1876, 91 U.S. 225, 226–227, 23 L.Ed. 308.

expressed in the Restatement [20] and applied by the courts of Florida. In Campbell v. Jacksonville Kennel Club, 1953, Fla., 66 So.2d 495, 497, the Supreme Court of Florida stated:

"It is established in most jurisdictions that an oral communication is actionable per se—that is, without a showing of special damage—if it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office, or (d) the other being a woman, acts of unchastity. See Restatement, Torts, Section 570."

In Teare v. Local Union No. 295, 1957, Fla., 98 So.2d 79, the Supreme Court of Florida had occasion to consider oral statements by defendant's agents to the owners of a building under construction with respect to the plaintiff Teare, a plumber, "That for the sake of your health you are making a mistake in engaging Mr. Teare, since his work is known to be unsatisfactory and will not pass inspection" and "That Mr. Teare's work has been repeatedly found to be unsatisfactory". The court found that these words, if falsely spoken, fell within the category of defamatory words which would prejudice the plaintiff Teare in his trade as a plumber. The court said:

" * * * When words are actionable in themselves, or per se, they are such as necessarily import damage and malice is presumed. When the words are slanderous per se, the offended party is not obligated to prove either malice or special damages in order to sustain his cause of action. Commander v. Pedersen, 116 Fla. 148, 156 So. 337; Tip Top Grocery Co. v. Wellner, 135 Fla. 518, 186 So. 219. In the early development of the law of slander spoken words were considered as slanderous per se only when they imputed to the offended party the commission of some indictable criminal offense. The rule has been expanded." [98 So.2d 79, 81, 82].

 Where a corporation such as the plaintiff in this case charges that a publication respecting it is slanderous per se, it is essential that it should reasonably and naturally appear from the publication complained of that it is of such a nature as to deprive it of the business it enjoyed or to render it so odious and contemptible in the estimation of those with whom it did have or might reasonably expect to have business dealings or connections as to injuriously affect its business. Here the oral statements were not ambiguous; their construction therefore was for the court. Given their plain and ordinary meaning they stated that plaintiff was delinquent in paying its bills to the materialman thus tending to prejudice the business reputation of the plaintiff as a reliable subcontractor and to injure plaintiff's credit. In this respect the oral statements are in the same category as the written words contained in the January 5th letter. We, accordingly, conclude that the district court was in error in holding that the subject matter of the letter and the statements was not actionable per se and that special damage had to be shown.

 In respect to the charge in the complaint that the defendants had told George Kinsman, vice president of Florida Power & Light Company, owner of the project, and Charles Braznell, president of the general contracting corporation, that plaintiff owed a past due bill in the amount of $102,000 for fixtures delivered and that defendant intended to file a claim of lien, the district court found, on the evidence submitted at argument on the motion for summary judgment, that the statement had not been communicated to Mr. Kinsman and accordingly granted sum-

20. Restatement, Torts, §§ 570, 573.

mary judgment on that claim. However, no finding was made by the court in respect to the allegation that the false statement was also made to Mr. Braznell, which, if proved, would sufficiently support the claim. This court has repeatedly stated that the purpose and function of Rule 56, F.R.Civ.P., is to permit the speedy and expeditious disposal of cases when there is no genuine issue of fact to be tried.[21] Moreover, the rule should be invoked cautiously to the end that parties may always be afforded a trial when there is a bona fide dispute of fact between them.[22] Accordingly, it was error to dismiss this claim.

The district court also found that the plaintiff had not suffered any damage resulting from the false statement made to Mr. Johnson, but that on the contrary the plaintiff had been paid for that construction job and had been permitted to bid on other jobs, and summary judgment was entered on this claim also. However, as we have heretofore pointed out, the character of the false statements here involved did not require proof of special damage.

We, of course, are not here passing on the ultimate rights of these parties which will be determined when the cause is tried on the merits. We merely hold that the district court, having found that the complaint sufficiently alleged falsity and malice, erred in concluding that proof of special damage was necessary to support the allegations of the complaint. We conclude that there were present genuine issues of fact and that the trial court, therefore, erred in granting summary judgment. The cause must accordingly go back to the district court for trial on the merits.

Reversed and remanded.

21. Carantzas v. Iowa Mutual Insurance Company, 5 Cir.1956, 235 F.2d 193, 195–196; Demandre v. Liberty Mutual Insurance Company, 5 Cir.1959, 264 F.2d 70, 72; Travelers Insurance Co. v. Busy Electric Co., 5 Cir.1961, 294 F.2d 139; Barber v. Motor Vessel "Blue Cat", 5 Cir.1967, 372 F.2d 626, footnote 1.

22. Associated Press v. United States, 1945, 326 U.S. 1, 5–6, 65 S.Ct. 1416, 89 L.Ed. 2013.