[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13807
Non-Argument Calendar
_____

D.C. Docket No. 9:14-cv-80682-DMM


RICHARD KEITH ALAN, II,

Plaintiff-Appellant,

versus

WELLS FARGO BANK, N.A.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 24, 2015)

Before JORDAN, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Richard Keith Alan II, an attorney appearing *pro se*, appeals the dismissal with prejudice of his defamation per se complaint against Wells Fargo, commenced in Florida state court and removed to federal district court, pursuant to 28 U.S.C. § 1332.  We affirm the district court's decision.

## I.

On March 25, 2014, Defendant Wells Fargo sent a one-page attorney trust overdraft report to the Florida Bar Staff Counsel.  On its face, the report showed the last four digits of the trust account number and indicated that: (1) a "Richard Alan" had an overdrawn trust account with Wells Fargo totaling $7,468.07; (2) a check in the amount of $35,338.00 had been returned; and (3) the account holder was charged a $35.00 fee.  The report did not include a cover letter or any other statements from Wells Fargo.  Upon receiving the report, the Florida Bar sent Plaintiff a letter asking him to explain the circumstances surrounding the overdraft of the trust account.  In pertinent part, the letter stated, "[a] reply from you will assist this office in determining whether this is a matter which must be referred to a Grievance Committee."  After receiving a letter of explanation from Plaintiff, the Florida Bar closed the investigation.  According to the Complaint, Plaintiff has

never had, nor has he ever attempted to open, an attorney trust account with Wells Fargo.[1]

In April 2014, Plaintiff filed a Complaint in Florida state court, alleging, in relevant part, one count of defamation per se against Wells Fargo.  Wells Fargo removed the action to the Southern District of Florida and filed a Motion to Dismiss.  The district court granted the Motion, dismissing Plaintiff's defamation per se claim with prejudice because (1) the overdraft report could not have been about Plaintiff given that he did not have a trust account at Wells Fargo and (2) negative stigma or irreparable harm sufficient to support a claim could not come from the issuance of the overdraft report.  The court also noted that the statement was "likely privileged" but did not decide that question.  Plaintiff filed a Motion for Reconsideration in June 2014.  The court denied the order and then definitively held that Wells Fargo's statement to the Florida Bar was privileged.  In August 2014, Plaintiff filed this timely appeal.

## II.

We review *de novo* a district court's Rule 12(b)(6) dismissal for failure to state a claim, taking all alleged facts as true and construing them in the light most favorable to the plaintiff.  *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261,

---

[1] In its Motion to Dismiss, Wells Fargo explained that the first and middle name of the subject of the report is "Richard Alan."  The last name of the subject was located on the next line of the document, which was "cut off on the overdraft report transmission" to the Florida Bar.

1265 (11th Cir. 2012).  In order to overcome a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In considering a motion to dismiss, a court should first "eliminate any allegations in the complaint that are merely legal conclusions," and then "where there are well-pleaded factual allegations, assume their veracity and [] determine whether they plausibly give rise to an entitlement to relief."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal quotations omitted).

Because the alleged defamation was published in Florida, Florida state law is controlling.  *Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*, 378 F.2d 377, 381 (5th Cir. 1967).  Defamation, which includes libel and slander, is generally defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another."  *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973).  To state a claim of defamation, the plaintiff must allege that "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff."  *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. 3rd DCA 1999).  However, in a defamation per se action, the plaintiff does not need to show any

4

special damages. *Johnson v. Fin. Acceptance Co.*, 159 So. 364, 365 (Fla. 1935). Per se defamatory statements are "so obviously defamatory" and "damaging to reputation" that they "give[] rise to an absolute presumption both of malice and damage." *Wolfson*, 273 So. 2d at 776. A written publication constitutes libel per se under Florida law if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession. *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953).

### III.

On appeal, Plaintiff argues that the district court erred in concluding (1) that he failed to sufficiently state a claim of defamation per se and (2) that the overdraft statement was subject to absolute privilege. Thus, Plaintiff contends his complaint was improperly dismissed for failure to state a claim. Our analysis begins and ends with the second issue. We affirm the district court's dismissal of the defamation per se claim on the basis that Wells Fargo's communication to the Florida Bar was protected by absolute privilege.

Florida grants absolute immunity against defamation claims to an individual who files a complaint against an attorney with the Florida Bar. *Tobkin v. Jarboe*, 710 So. 2d 975, 976 (Fla. 1998). However, an individual forfeits his immunity if, after filing a complaint, he comments publicly or outside the official grievance

process.  *Id.*  In *Tobkin*, a client filed a complaint letter with the Florida Bar

alleging that her attorney, Donald Tobkin, engaged in professional misconduct.  *Id.*

The Florida Bar Grievance Committee unanimously found no probable cause to

believe Tobkin was guilty of professional misconduct.  Tobkin then filed a libel

action against the former client.  *Id.*  The Florida Supreme Court held that Tobkin

was barred from filing the action, explaining that attorneys necessarily forfeit some

rights by their membership in the legal profession:

> For the sake of maintaining the high standards of the profession and disciplining those who violate the Canons of Legal Ethics, one who elects to enjoy the status and benefits as a member of the legal profession must give up certain rights or causes of action which, in this instance, is the right to file an action against a complainant who lodges an unsucccessful complaint with the Grievance Committee of The Florida Bar.

*Id.* (quoting *Stone v. Rosen*, 348 So. 2d 387, 389 (Fla. 3rd DCA 1977)).  The Court

emphasized "strong public policy reasons for encouraging individuals with

knowledge of attorney misconduct to step forward and present such evidence" so

that the Court can accomplish its disciplinary duties, even though some individuals

may occasionally file "groundless or baseless complaints."  *Id.* at 977.

In its order denying Plaintiff's Motion for Reconsideration, the district court,

citing *Tobkin*, held that Wells Fargo's statement to the Florida Bar was privileged.

We agree.  *See Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984) (whether

defamation is privileged is a question of law to be decided by the court).  Although

Plaintiff argues that this absolute privilege only protects complaints filed by <u>clients</u> of attorneys, *Tobkin* makes clear that the privilege covers "an <u>individual</u> who files a complaint against an attorney as long as the complainant makes no public announcement of the complaint outside the grievance process." *Tobkin*, 710 So. 2d at 978 (emphasis added). While not a traditional letter of complaint submitted by a client, overdraft reports are necessary for the Florida Bar to identify and investigate attorneys who are inappropriately managing trust accounts. *See* Rules Regulating the Florida Bar R. 5-1.2(d)(4).

Rule 5-1.1(a)(1) of the Rules Regulating the Florida Bar requires attorneys to "hold in trust, separate from the lawyer's own property," clients' funds that are held in connection with representation. The Rules strictly regulate the collection, retention, and spending of clients' funds held in a trust account. *See id.* Additionally, an attorney is also required to authorize his bank to notify the Florida Bar in the event of possible misconduct related to a trust account. Rule 5-1.2(d)(4) states:

> The lawyer [] must authorize, at the time the account is opened, and request any bank . . . where the lawyer is a signatory on a trust account to notify Staff Counsel, The Florida Bar, . . . in the event the account is overdrawn or any trust check is dishonored or returned due to insufficient funds or uncollected funds, absent bank error.

Like a client complaint letter, an overdraft report provides crucial information to the Florida Bar that is necessary to determine whether an attorney violated ethical

7

rules. And the Florida Supreme Court has held that the absolute privilege extends to "all information necessary to investigate the complaint." *Magre v. Charles*, 729 So. 2d 440, 443 (Fla. 5th DCA 1999). An attorney trust overdraft report is therefore entitled to the protection of the privilege. And here Plaintiff did not allege that Wells Fargo made any comments publicly or outside the process through which it submitted the report that would have removed the protection of absolute immunity. *See Tobkin*, 710 So. 2d at 977.

Finally, Plaintiff's arguments about the scope and construction of Rule 5-1.2(d)(4) are unavailing. He contends that because he never opened a trust account with Wells Fargo, he never authorized the bank to send the overdraft report. But an attorney rarely, if ever, "authorizes" a client to file a complaint against him. The fact that Plaintiff did not authorize the report pursuant to Rule 5-1.2(d)(4) is immaterial to whether the report is privileged. Additionally, Plaintiff argues that the language of Rule 5-1.2(d)(4), which ends with the caveat "absent bank error," strips Wells Fargo of its immunity because the bank erred in sending the incorrect report. But Plaintiff misconstrues the Rule, which merely states that the lawyer authorizes a bank to notify the Florida Bar in the event of an overdraft, unless the overdraft itself resulted from bank error. That kind of bank error is not at issue here. Accordingly, we affirm.

**AFFIRMED.**

8