223 So.2d 359 (1969)
John W. HARWOOD, Appellant,
v.
Betty BUSH and Jupiter-Tequesta Beacon, Inc., a Florida Corporation, Appellees.
No. 2058.
District Court of Appeal of Florida. Fourth District.
May 5, 1969.
Rehearing Denied June 23, 1969.
*360 J. Ralph Mabie, West Palm Beach, for appellant.
Joseph D. Farish, Jr., and Martin J.A. Yeager, of Farish & Farish, West Palm Beach, for appellees.
WALDEN, Chief Judge.
Plaintiff, John W. Harwood, filed a complaint in three counts charging defendants with libel. Attached as exhibits were the allegedly libelous newspaper articles.
Defendants moved to dismiss the complaint for failure either to allege special damages or to state a cause of action in libel per se. Their motion was granted with leave for plaintiff to amend his complaint within 15 days. Apparently satisfied that his cause of action was sufficiently pled, plaintiff declined to amend. Accordingly the trial court dismissed the cause with prejudice. We affirm in part, and reverse in part.
It is settled law that upon a motion to dismiss, a complaint is to be construed most strictly against the pleader, and essential allegations will not be imported by inference. E.g. Drady v. Hillsborough County Aviation Authority, Fla.App. 1966, 193 So.2d 201. Behind this is, of course, the assumption that the litigant has stated his case or defense as strongly as the facts permit. McComb v. Hygeia Coca-Cola Bottling Works, 1939, 137 Fla. 260, 188 So. 219. Adding pertinence to this assumption is the fact that this plaintiff declined to amend his complaint after it was first dismissed with leave to amend.
*361 We observe in passing that it would have been a happier circumstance had plaintiff taken advantage of the opportunity to replead and thereby improve his complaint by meeting the legal objections to it. Had this been done the complaint could have been removed from the borderline category and the decision as to its sufficiency made apparent. Quite likely the need for appeal would have been thereby eliminated to the advantage of all concerned.
As we noted at the outset, plaintiff's complaint is in three counts. Count III is clearly defective in that it contains no allegation of a notice or demand for retraction of the objectionable article. Since Section 770.01, F.S. 1967, F.S.A., makes notice a condition precedent to a libel action against a newspaper or periodical, Count III must fall. Hevey v. News-Journal Corp., Fla.App. 1963, 148 So.2d 543. This infirmity does not affect the two remaining counts.
Counts I and II herein do not allege special damages, nor do they allege defamation by virtue of extrinsic facts. To stand, therefore, they must sufficiently allege a publication which is libelous per se.
A publication is libelous per se if, when considered alone without innuendo, it tends to subject one to hatred, distrust, ridicule, contempt or disgrace, or tends to injure one in his trade or profession; or if it imparts conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office. Richard v. Gray, Fla. 1953, 62 So.2d 597; O'Neal v. Tribune Co., Fla. App. 1965, 176 So.2d 535.
The article alleged to be libelous in Count I of plaintiff's complaint was an allegorical tale of one "Harwood the Rat."[1] Construed as the common mind would understand it, Walsh v. Miami Herald Publishing Co., Fla. 1955, 80 So.2d 669, this article conveys the impression that "Harwood" was a rat; that he had trespassed on the yacht in question and had, some time previously, pillaged another yacht. Measured by the above mentioned standards, it is clearly libelous per se of "Harwood" since it portrays him as one to be distrusted. The *362 conduct attributed to "Harwood" is also incompatible with the proper exercise of plaintiff's profession as a private investigator.
Although the article fails to identify plaintiff directly as "Harwood the Rat" plaintiff has sufficiently alleged that the article was meant to refer to him, and that many persons reading the article so understood it. It was held in the O'Neal case, supra:
"It is not essential that the person defamed be named in the publication if, by intrinsic reference, the allusion is apparent, or if the publication contains matters of description or reference to facts and circumstances from which others may understand that he is the person referred to, or if he is pointed out by extraneous circumstances so that persons knowing him can and do understand that he is the person referred to; and it is sufficient if those who know the plaintiff can make out that he is the person meant. 33 Am. Jur., Libel and Slander, section 89, page 102; and for numerous jurisdictions holding to this effect, see 91 A.L.R. 1161, 1163."
We conclude then that Count I of plaintiff's complaint does state a cause of action in libel per se.
Count II was directed at an article published in the Beacon News on July 20, 1967. Without elaboration, this article is also libelous per se. It reflects upon plaintiff's honesty and imparts to him conduct clearly incompatible with the proper exercise of his profession. Therefore the dismissal of this count was also erroneous.
We affirm the dismissal of Count III of plaintiff's complaint, but reverse as to Counts I and II.
Affirmed, in part; reversed, in part.
REED, J., concurs.
McCAIN, J., concurs as to the affirmance and dissents as to the reversal.
NOTES
[1] The entire text of the article reads as follows:
 "TRUTH OR CONSEQUENCES
 ..........by Betty Bush

"You Think YOU Have Rats?
"If Cat Cay lived up to its name, chances are I wouldn't have seen Harwood. Harwood is a rat. (The name was chosen because of its fine English sound. Harwood comes from a long and distinguished line of rats. The resemblance to any person living or dead is purely coincidental.)
"I was sitting in the lounge of the C'est La Vie reading the Bahamian Cruising Guide one midnight when I glimpsed movement.
"I looked up, and there was Harwood sitting on the step regarding me with a black, beady, steady stare. I stared back. His glossy coat was touched with gray, he was sleek, fat. Harwood obviously was no ordinary rat. He had boarded the vessel without so much as a `May I?', had entered the lounge and taken a seat. His years of experience as a snooper came to the fore when I rose to my feet and started toward him. With one leap, he cleared the steps, hit the deck and was gone.
"I closed the lounge door, and went back to the Guide. A little later I heard a scratching noise, not unlike that made by a 16mm miniature camera. There was Harwood peering through the window. Enough is enough. At this point, I threw the Bahamian Guide at the window, and saw Harwood disappear again.
"He surely would return, not having completed his mission, whatever it might be. I closed the windows, the hatches, the Guide, looked outside, and there was Harwood, climbing a palm tree. Probably looking for a better vantage point.
"Next morning, I learned that weeks before, Harwood had pillaged a visiting yacht, and destroyed the owner's entire food supply, leaving him with nothing but an appetite.
"Since this happened, a crop of cats are `coming along' on Cat Cay. With rats of Harwood's ilk, they will doubtless be more effective than a .38."