**MELDEAU INTERNATIONAL INC., Plaintiff,**

v.

**GOODYEAR TIRE & RUBBER CO., Defendant.**

**No. 90–0089–CIV.**

United States District Court, S.D. Florida, Miami Division.

Nov. 14, 1990.

White & Case, Miami Fla., for plaintiff.

Donald Middlebrooks, Miami, Fla., Marshall Cox, New York City, for defendant.

## MEMORANDUM OPINION

ORDER ADOPTING AND AFFIRMING MAGISTRATE'S REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING ARBITRATION AND/OR MOTION TO DISMISS

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon Magistrate William C. Turnoff's Report and Recommendation denying Defen-

dant's Motion to Stay all proceedings relating to the tortious interference with business relations claim and the antitrust claim until the outcome of arbitration between Gummiwerke Fulda GMBH ("Fulda") and Meldeau International Inc. ("Meldeau/Plaintiff") and denying Defendant's Motion to Dismiss the slander claim.

## BACKGROUND

This is an action in which Plaintiff, Meldeau International Inc., alleges tortious interference with business relations, slander and conspiracy to fix prices and restrain trade. This action arises out of alleged oral promises made subsequent to the Sole Distributorship Agreement (the "Agreement") between Meldeau, a company selling tires, and Fulda, a tire manufacturing company wholly owned by Defendant Goodyear Tire & Rubber Company ("Goodyear"). Three months after this suit was filed, Fulda initiated an arbitration proceeding against Meldeau seeking to determine the extent of Fulda's obligations to Plaintiff. Goodyear moves to stay all further proceedings pending the outcome of the arbitration proceeding between Plaintiff and Fulda and moves to dismiss the slander claim for failure to state a claim.

The Report and Recommendation of the Magistrate concludes that the issues in arbitration are not sufficiently identical to support the entry of a stay, that under the liberal notice pleading requirements of the Federal Rules of Civil Procedure Plaintiff has sufficiently stated a claim for slander and that, inasmuch as Goodyear is not a party to the arbitration, the arbitration between Meldeau and Fulda will not determine the outcome of Meldeau's antitrust suit against Goodyear.

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

### BACKGROUND

Plaintiff alleges Fulda entered into an agreement with Meldeau, in 1982, making Meldeau the exclusive U.S. distributor of the Fulda tire. The contract was to begin on June 1, 1982, to be valid for two years and to be renewed automatically in the absence of a notice to terminate. The contract also stipulates that the right to termi-

nate the contract is unlimited. In May of 1984, the agreement was amended in writing (the "Amendment") to require twelve months notice of intent not to renew absent exceptions inapplicable to the case at bar.

Plaintiff further alleges Fulda promised Meldeau that as a condition to cancellation of the contract Fulda would purchase Plaintiff's U.S. tire distribution business for its fair market value. This oral promise allegedly arose in response to Plaintiff's expressed concern about his company's expending significant amounts of time and money promoting the Fulda tire. Plaintiff maintains that it relied upon this oral promise to launch an aggressive and expensive campaign to promote the Fulda tire.

Plaintiff alleges that thereafter a Spring dating program was developed to enable Plaintiff to defer payment of November and December purchases until March, April and May of the following year. In addition, Plaintiff alleges a 2% cash discount was given for cash payments on agreed terms. Plaintiff further alleges that at the urging of Fulda management, Plaintiff reinvested profits and that Michael Meldeau, President of Meldeau International Inc., contributed substantial personal assets in order to further develop and strengthen the U.S. market for the Fulda tire.

Plaintiff contends that in October of 1987 Fulda's financial director invited Plaintiff to commit to a five year business plan to further increase the sales of the Fulda tire in the U.S. to 500,000 units per year by 1992. Plaintiff asserts that Fulda organized a meeting in January of 1988 in West Germany to encourage Plaintiff to obtain a two million dollar bank line of credit to be repaid over the life of the five year plan. Plaintiff alleges that Fulda representatives assured Plaintiff and its bankers that the agreement would not be disturbed for five years and that the U.S. dollar prices would remain constant, regardless of currency fluctuations, for the duration of the five year plan. Plaintiff obtained the loan and sales allegedly increased.

On or about January 11, 1990, Meldeau filed this suit against Goodyear alleging tortious interference with business relation-

ship, slander and violation of antitrust laws. Plaintiff's Complaint asserts that Goodyear intentionally and without justification directly interfered with the business relationship between Meldeau and Fulda for the sole purpose of destroying Meldeau's United States distribution business and that Goodyear directed Fulda:

a) not to ship more tires to Meldeau than had been shipped the prior year;

b) to cancel its plans to distribute the Campo 4X4 tire through Meldeau;

c) to disregard the promise not to raise prices due to currency fluctuations;

d) to raise prices to unreasonable and unjustifiable levels;

e) to cancel its Spring dating program;

f) to rescind promised special discounts;

g) to impose unreasonable and unjustifiable credit requirements and withhold shipments of tires if the requirements were not met; and

h) to eliminate all factory support and promotion.

On or about March 2, 1990, Fulda initiated an arbitration proceeding with the International Chamber of Commerce, to apply for a declaration:

1. that Fulda is not obliged to buy Meldeau's U.S. tire distribution company;

2. that Fulda is not obliged to offer to purchase Meldeau's tire distribution company before Fulda is entitled to give proper notice to terminate the exclusive sales contract dated August 10, 1982/May 24, 1984.

3. that Fulda's right to give proper notice to terminate the exclusive sales contract dated August 10, 1982/May 24, 1984 does not preclude termination of the contract up to and including January 1993;

4. that Fulda is not obliged to abide by a US$/DM exchange rate of 1:2 in invoices and payments involving Meldeau under the exclusive sales contract between the parties dated August 10, 1982/May 24, 1984 up to and including January 1993;

5. that the following circumstances do not constitute a breach of the exclusive sales contract dated August 10, 1982/May 24, 1984 by Fulda and do not entitle Meldeau to claim damages against Fulda or to terminate the contract prematurely:

a) delivery to Meldeau in 1988 of not more tires than in 1987;

b) non-delivery to Meldeau of tires of the Campo 4X4 type;

c) increase in the delivery prices for tires;

d) deliveries of tires made in November and December 1989 to Meldeau, failure to grant time for payment until March/April/May 1990;

e) cancellation of promised special discounts for the deliveries of tires ordered by Meldeau from Fulda in November and December 1989;

f) limitation of trade credit and failure to make further deliveries if Meldeau fails to comply with such limits;

g) cancellation of manufacturer support and sales promotion;

## DISCUSSION

In support of its Motion to Stay, Defendant contends that Fulda's arbitral proceeding seeks to determine, *inter alia*, that Fulda is not obliged to buy Plaintiff's U.S. tire distribution company and that Fulda is not barred from terminating Plaintiff's distributorship before 1993. Defendant then concludes that these factual determinations go to the heart of the tortious interference and antitrust claims pleaded in Counts I and III of the Complaint.

These factual determinations will not be decided during arbitration for lack of authority or, if decided, will not be determinative of the factual issues relevant to the case at bar. Initially, it appears that the arbitration panel lacks the authority to decide Fulda's claim since the contract contains the following clause:

All disputes arising in connection with the present contract will be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by one or more referees appointed in accordance with the aforementioned rules. In case of dispute, arbitration will be held in Frankfurt (Main).

(Contract at § 21). Plaintiff claims that the arbitration clause is inapplicable to the oral promises made by Fulda to Plaintiff. Hence, Plaintiff claims that it never agreed to arbitrate the terms of this new situation, especially when it has so much to lose in light of its bolstered campaign. Since Fulda is seeking a determination of its obligations to Plaintiff based on the agreement, the amendment and the oral promises alleged by the Plaintiff, it appears the arbitration panel has no authority to make the declarations for which Fulda has applied. Consequently, the arbitral decision will have no collateral estoppel effect on the instant action.

■ Alternatively, if the arbitration panel has authority to determine whether a binding contract exists, Plaintiff will still be entitled to bring the present action. The claim for tortious interference does not require a binding contract. *PRN of Denver v. A.J. Gallagher & Co.*, 531 So.2d 1001, 1003 (Fla. 3rd DCA 1988). Therefore, the issue of whether Fulda has an obligation to buy the business or to honor the contract until 1993 is not determinative of whether Meldeau can recover in its tort action for tortious interference.

■ Defendant's argument implicitly assumes that breach of contract is an essential element of tortious interference with the business relationship. This assumption is incorrect. A claim for tortious interference must satisfy the following elements:

1) the existence of a business relationship, not necessarily evidenced by an enforceable contract;
2) knowledge of the relationship on the part of the Defendant;
3) an intentional and unjustified interference with the relationship by the defendant; and
4) damage to the plaintiff as a result of a breach of the relationship.

*Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla.1985). The requirement of breach of a business relationship is less stringent than a breach of contract right. Inasmuch as it appears that the arbitration panel only has authority to determine if a breach of contract exists, the arbitration would not even partially address the issues that form the basis of Meldeau's claim against Goodyear.

■ It is well established that a stay as to pending litigation is appropriate in circumstances in which the arbitration proceeding at least partially determines the issues involved in the litigation. *Hikers Indus. v. William Stuart Indus.*, 640 F.Supp. 175, 178 (S.D.N.Y.1986). The arbitration panel only has authority to determine whether a breach of contract exists; the issue relevant to the instant litigation is breach of relationship. Consequently, the result of the arbitration in this regard will not be dispositive of the issue of breach of relationship.

■ Furthermore, Goodyear contends that under the doctrine of collateral estoppel, a judgment entered in an arbitration award is given preclusive effect in subsequent proceedings. *French v. Jinright & Ryan, P.C.*, 735 F.2d 433, 436 (11th Cir. 1984). Although this proposition is true in general, it is limited by the three prerequisites to applying collateral estoppel:

(1) that the issue at stake be identical to the one involved in the prior litigation,
(2) that the issue have been actually litigated in the prior litigation, and
(3) that the determination of the issue in the prior litigation have been a critical and necessary part of the judgment in the earlier action.

*Deweese v. Town of Palm Beach*, 688 F.2d 731, 733 (11th cir. 1982). It is only if these prerequisites are satisfied that the doctrine of collateral estoppel precludes Plaintiff's relitigation of an issue decided in a prior case. *Id.* at 733. In the instant case these prerequisites are not satisfied.

■ The first prerequisite is not satisfied because the issue in the arbitration proceeding is breach of contract. The issue in the case at bar, however, is whether there is a breach of relationship. Moreover, the second and third prerequisites will not be satisfied after arbitration since it appears that the arbitration panel does not have the authority to determine the rights of the relationship but are limited to the rights under the contract. Consequently, collateral estoppel will not preclude re-

litigation of the issues involved in the case at bar.

In addition, Goodyear claims that Plaintiff's Complaint is premised expressly on Goodyear's alleged interference with Meldeau's contract with Fulda. The Defendant argues that irrespective of whether a binding contract is required by law, a binding contract is necessary in this case because that is what Plaintiff has pleaded. The undersigned is not persuaded by this argument.

First, Plaintiff relies on the agreement, amendment and oral promises as the basis for the breach of the business relationship. The action is proper with or without the existence of an enforceable contract. Moreover, the Complaint alleges a breach of the obligations Fulda owes to Meldeau. Initially, the Complaint alleges circumvention of the lawful obligations Fulda owed to Meldeau. Lawful obligations are not limited to contractual obligations. Moreover, the Complaint alleges that Fulda unlawfully failed to purchase the Fulda tire United States distribution business from Meldeau for fair value. This alleged breach is based solely on alleged oral promises made in addition to the written contract. Therefore, Goodyear's claim that the Plaintiff pleaded a breach of the written contractual relationship is only partly accurate and, in any event, not dispositive of the instant issue.

Finally, to prevent prejudice to the parties the stay must be denied. Plaintiff accurately asserts:

> In all events, Meldeau's claim against Goodyear will be delayed for years. This suit was filed January 11, 1990. The arbitration was not even initiated by Fulda until several months later on March 2, 1990. The parties have yet to agree on a third arbitrator, much less establish the terms of arbitration. A period of over six months have passed since the suit was filed and the arbitration panel and format of the arbitration have not even been decided ...

Meldeau's Memorandum of Law on Collateral Estoppel, at 17. In denying the Motion to Stay this Court prevents such prejudice to Plaintiff. *See Societe Nationale v.*

*General Tire & Rubber Co.,* 430 F.Supp. 1332, 1335 (S.D.N.Y.1977). In sum, this Court supports Magistrate Turnoff's conclusion that the issues in the arbitration proceeding and the pending litigation are not sufficiently identical to justify a stay and that Florida law does not require a binding contract to sustain a claim for tortious interference because interference is a tort action and not dependent on an underlying contract.

SLANDER

## BACKGROUND

Plaintiff alleges that Defendant told a substantial number of Plaintiff's customers and potential customers that Fulda had cancelled Plaintiff's distributorship effective December 31, 1989. Plaintiff argues that this statement is false and was made intentionally and maliciously to defame the business reputation of Meldeau International. In addition, Plaintiff alleges that this statement caused serious injury to the business reputation of Plaintiff in that many of Plaintiff's dealers and other potential customers refrained from purchasing Fulda tires from Plaintiff. Defendant argues the slander claim should be dismissed for failure to state a claim because the statement is not defamatory as a matter of law. The undersigned disagrees with Defendant's contention in this regard.

## DISCUSSION

Plaintiff has satisfied the liberal pleading requirements under the Federal Rules of Civil Procedure. In *Caster v. Hennessey,* the Eleventh Circuit found a cause of action for slander properly pleaded when the complaint reproduces the allegedly defamatory statement and generally describes its publication. *Caster v. Hennessey,* 781 F.2d 1569, 1570 (11th Cir.1986).

The Complaint in the initial case reproduced the allegedly defamatory statement and described its publication. This is sufficient to place Defendant on notice of the claim it will be defending. This satisfies the requirements of the Federal Rules. The Magistrate's Report correctly concludes that the statement alleged in the Complaint sufficiently states a claim for slander.

Goodyear argues that inasmuch as the alleged slander does not assail a corporation's business reputation by imputing insolvency or pecuniary difficulties, impugning the corporation's business methods or assailing its management, the statement is not defamatory and cannot as a matter of law constitute slander. *See Diplomat Electric, Inc. v. Westinghouse Electrical Supply Co.*, 378 F.2d 377, 383 (5th Cir.1967). Defendant's reading of this case is incorrect. *Diplomat* does not allege that one must impugn solvency or pecuniary difficulties, but that such action constitutes slander *per se*. Plaintiff is not limited to bringing an action upon these bases—a statement is defamatory if, when considered alone without innuendo, it tends to injure one in his trade or profession. *See Harwood v. Bush*, 223 So.2d 359, 361 (Fla. 3d DCA 1969). Thus, inasmuch as Meldeau alleges injury to its trade or profession, Plaintiff sufficiently states a claim for slander.

## VIOLATION OF THE SHERMAN ACT

### BACKGROUND

As the basis for the antitrust claim, Plaintiff asserts that Goodyear acted in concert with several of its dealers. Plaintiff alleges that Goodyear decided that the Fulda tire would be sold by Goodyear dealers at a price substantially in excess of its prevailing United States market price. Consequently, Plaintiff claims that Goodyear has both fixed the price of Fulda tires and wrongfully taken Meldeau's business from Meldeau.

Plaintiff argues that in the Spring of 1988, Defendant decided to eliminate Plaintiff's exclusive distributorship of Fulda tires. Plaintiff reaches these conclusions based on the following allegations as expressed in Plaintiff's complaint:

Goodyear used improper means and in particular directed Fulda:

a) not to ship more tires to Meldeau International than had been shipped the prior year on the pretext of a shortage even though the tires were available and Meldeau International had placed orders for them;

b) to cancel its plans to distribute the Campo 4X4 tire through Meldeau International after it had been promised to and promoted by Meldeau International;

c) to disregard the promise not to raise prices due to currency fluctuation;

d) to raise prices to unreasonable and unjustifiable levels;

e) to cancel its long standing policy of Spring dating on November and December purchases;

f) to rescind promised special discounts for November and December purchases after tires had been sold by Meldeau International based on those discounts;

g) to impose unreasonable and unjustified credit requirements and withhold shipments of tires if the requirements were not met; and

h) to eliminate all factory support and promotion.

As a premise to the Plaintiff's claim, plaintiff further asserts that:

At all times material hereto, Goodyear had actual knowledge of the full nature and extent of Meldeau International's business relationship with Fulda. In particular, Goodyear was aware of:

a) the written distributorship agreement and amendment thereto;

b) the requirement that Fulda must give one year notice of its intention not to renew;

c) the promise to purchase the business for its fair value as a condition to renewal;

d) the promise not to increase the United States dollar pricing due to currency fluctuations during the five year plan.

### DISCUSSION

Goodyear argues that even assuming a scheme is found to exist, Goodyear will not be in violation of the antitrust laws. Goodyear further contends that if the arbitration binds Fulda to an exclusive distributorship agreement with Meldeau for the succeeding five years, Goodyear will be unable to implement its alleged inchoate scheme to supplant Meldeau as Fulda's United States distributor and set resale prices of Fulda

tires. Consequently, Goodyear argues that if Goodyear cannot successfully supplant Meldeau as the United States distributor for Fulda and set resale prices of Fulda tires there is no violation of the antitrust act. Defendant cites no case law to support the argument that it must implement its alleged inchoate scheme to be held liable for price fixing.

 Significantly, an anticompetitive effect is not a requisite element of price fixing. In a civil action under the Sherman Act, liability may be established by proof of an unlawful purpose alone. *United States v. United Gypsum Co.*, 438 U.S. 422, 436, n. 13, 98 S.Ct. 2864, 2873 n. 13, 57 L.Ed.2d 854 (1978). Moreover, the United States Court of Appeals for the Second Circuit found monopoly power does not have to be attained or even be attainable. Rather, it is sufficient that obtaining such power is the purpose which motivates the conspiracy. *United States v. Consolidated Laundries Corp.*, 291 F.2d 563, 572–3 (2d Cir. 1961). This reflects the rationale that the violation is conspiracy to monopolize and not monopolization. Therefore, Defendant's claim that Plaintiff must prove that an anticompetitive effect results is without merit.

Alternatively, Defendant argues that if the arbitrators determine that Fulda acted within its rights in terminating Meldeau as distributor, because of Meldeau's failure to live up to its bargain, Meldeau will be unable to demonstrate any "injury" resulting from a violation of the antitrust laws. Defendant relies upon *Atlantic Richfield Co. v. USA Petroleum Co.*, for the proposition that a plaintiff must prove the existence of '*antitrust*' injury—injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful—to recover on an antitrust claim. *Atlantic Richfield Co. v. USA Petroleum Co.*, —— U.S. ——, 110 S.Ct. 1884, 1889, 109 L.Ed.2d 333 (1990) (citing *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977)).

Defendant's conclusion is rooted in two incorrect premises. The first incorrect premise is Defendant's factual allegation that Meldeau may have failed to live up to its bargain. Meldeau's actions are not placed at issue by Fulda in the arbitral proceeding and are not placed in issue by Goodyear in this litigation proceeding. Thus, this issue is not relevant.

 The second incorrect premise is Defendant's assumption that the antitrust issue will be resolved by a determination of whether Fulda had the right to take the actions it took with respect to Meldeau. The resolution of this issue is dependent upon whether Goodyear was legally permitted to order Fulda to raise the price of its tires with respect to Meldeau, thereby violating price fixing laws. Consequently, the conclusion as to whether there is price fixing and, thereby a violation of antitrust laws, is dependant upon Goodyear's activities, not the actions of Meldeau or Fulda.

Defendant's last argument is that this action should be stayed because the arbitrators' determinations will decide the issues in this litigation or at least substantially advance their resolution. Defendant's argument is erroneous—the resolution of the antitrust claim involves factual and legal determinations regarding the actions of Goodyear with respect to its independent dealers. As discussed above, whether Goodyear caused Fulda to act in the manner it did will not arise in the arbitration proceeding; the arbitration deals with the contract and/or agreement between Plaintiff and Fulda. Accordingly, it is hereby

ORDERED AND ADJUDGED that after a *de novo* review of the Magistrate's Report and Recommendation said Report and Recommendation is ADOPTED and AFFIRMED. Consequently, Defendant's Motion to Stay the Tortious Interference with Business Relations and Antitrust Claim and Motion to Dismiss the Slander Claim are DENIED.

DONE AND ORDERED.